**In re Harvey G. HERBERMAN, M.D. and Sheila Herberman, Debtors.**

**Bankruptcy No. 90–30141–C.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Oct. 26, 1990.

Raymond T. Nimmer, John P. Melko, and Anne M. Ferazzi, Sheinfeld, Maley & Kay, Houston, Tex., for debtor.

E.P. Kirk, El Paso, Tex., for Cox Group.

Berry D. Spears, Winstead, McGuire, Sechrest & Minick, for creditor, Fed. Ins. Corp.

## ORDER GRANTING MOTION TO COMPEL DEBTORS TO DELIVER PROPERTY TO THE ESTATE

LEIF M. CLARK, Bankruptcy Judge.

This decision addresses the issue whether income accruing to an individual debtor during the course of a chapter 11 bankruptcy from his operation of a service oriented sole proprietorship is property of the estate. The creditors assert that all income accruing to the debtor post-petition and pre-confirmation is property of the estate. The debtor maintains that all income from services provided by the individual debtor is excluded from the estate by Section 541(a)(6) of the Bankruptcy Code.

### BACKGROUND

The debtor, Dr. Herberman, filed his Chapter 11 petition July 3, 1989. Although he is a long standing resident of El Paso, Texas, he chose to file in Austin, Texas. On January 1, 1990, Dr. Herberman's creditors prevailed on a motion for change of venue and the case was transferred to El Paso. The motion for turnover of property of the estate under consideration was filed by a group of Dr. Herberman's former business associates, specifically these are, James Duvall, Crown Point Corporation,

James Peterson, Pinecliff Corporation, Ira Batt, Nell Sergent, Paul Sergent, Irene Batt, Albert Cox and Maureen Cox (the "Cox Group").

Dr. Herberman is an established, well-respected urologist. He has practiced in the El Paso community for over 20 years. The two other urologists who testified at the hearing on this matter stated that they were familiar with Dr. Herberman's work and that he was held in high esteem in the El Paso medical community. He is Board Certified in his specialty and has been chosen to be a Fellow of the American College of Surgeons.

Dr. Herberman's medical practice is profitable. During the past five years he has reported the following income figures:

| | |
|---|---|
| 1985: | $127,000 |
| 1986: | $479,000 |
| 1987: | $430,000 |
| 1988: | $547,554 |
| 1989: | $698,631 |

Dr. Herberman operates as the only physician in a sole proprietorship. He has both a surgery and an office practice, with the latter serving to support the former. The debtor's practice is based on volume, including volume surgeries. He advertises heavily in both English and Spanish. On his office days, he is limited to spending only a few minutes with each patient. His surgeries are scheduled (often back to back) at various hospitals in the El Paso area. To make the operation flow, Dr. Herberman employs ten other individuals. These employees schedule patient appointments, take background information, channel patients into examination rooms, submit insurance forms, assure collections and schedule surgeries. The assistance of these employees is essential to the financial performance of Dr. Herberman's practice. In short, he could not generate the revenues he does without the volume, and he could not handle the volume without his staff.

Dr. Herberman's offices are relatively large, with parking for upwards of at least a dozen cars. His practice does not involve a significant need for sophisticated or expensive office equipment, drugs, or supplies, though he of course does have examining tables and medical "tools." He also has the usual complement of routine office equipment and furniture.

## DISCUSSION

The debtor asserts that all income from his practice is excluded from the estate as his personal service earnings, relying on Section 541(a)(6) and a bankruptcy decision out of the Southern District of Texas (also involving a physician). *See* 11 U.S.C. § 541(a)(6) ("... except such as are earnings from services performed by an individual debtor after the commencement of the case"); *In re Cooley*, 87 B.R. 432 (Bankr.S. D.Tex.1988).

The creditors maintain that all of debtor's income become property of the estate under Section 541(a)(7), and that only the court-approved "salary" of the debtor is then excluded by operation of Section 541(a)(6).

The case law on this issue is limited. In the opinion of this court, the two reported seminal cases on point[1], while logical and well written, are not faithful to the essential statutory framework laid out in the Bankruptcy Code. We commence with a discussion of these two decisions.

A. Prior case authority

1. *In re FitzSimmons*

In *FitzSimmons*, the bankruptcy court had permitted an attorney who operated his practice as a sole proprietorship to pay himself a salary of $3,500 per month out of the funds of his law practice, but required him to remit to a trustee at the end of each month all funds generated by the law practice in excess of $15,000. *In re FitzSimmons*, 725 F.2d 1208, 1209 (9th Cir.1984). The Bankruptcy Appellate Panel reversed the bankruptcy court's order "insofar as it holds that post-bankruptcy earning from services performed by an individual debtor

**1.** *In re FitzSimmons*, 725 F.2d 1208 (9th Cir. 1984); and, *In re Cooley*, 87 B.R. 432 (Bankr.S. D.Tex.1988).

are property of the estate in a Chapter 11 case." *In re FitzSimmons*, 20 B.R. 237, 240 (Bankr. 9th Cir.1982). On appeal, the Ninth Circuit held that, pursuant to Section 541(a)(6), all the earnings generated by services "personally" performed by an individual debtor are excluded from becoming property of the estate, reversing the bankruptcy court's "salary" approach. *Fitz-Simmons*, 725 F.2d at 1211. The court reasoned that the creditors of a sole proprietorship should be entitled to enjoy the profits of the business just as surely as they are visited with its losses during bankruptcy, but that the earnings generated by the *individual debtor* (as distinguished from the sole proprietorship) are excluded by operation of Section 541(a)(6). The circuit court went on to note that the debtor's personal services did not include "the business' invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like." *Id.*

### 2. *In re Cooley*

In *Cooley* the bankruptcy court for the Southern District of Texas was confronted with a Chapter 11 debtor who was also a world renowned heart surgeon. *In re Cooley*, 87 B.R. 432 (Bankr.S.D.Tex.1988). The debtor, Dr. Denton Cooley, operated his practice as a sole proprietorship but employed four associate surgeons who accounted for a substantial amount of his revenues. One of Dr. Cooley's major creditors moved to limit the operation of Dr. Cooley's business.[2]

The court agreed with *FitzSimmons* that all of Dr. Cooley's earnings post-petition and pre-confirmation were properly excluded from the bankruptcy estate, but disagreed with the Ninth Circuit's engrafting of the word "personal" into Section 541(a)(6):

> To the extent that [*FitzSimmons*] requires a valuation of an individual's personal or "hands-on" services, I cannot concur. The earnings exception does not

by its language direct that I conduct a valuation hearing to ascertain that portion of the postpetition income stream of a sole proprietorship attributable to the personal services of an individual debtor.... Instead, I hold that ... the burden of proof rests upon the creditor as movant to show that the purported individual debtor's earnings are in actuality "[p]roceeds, product, offspring, rents [or] profits" derived from those assets or other property interests which have previously accrued to the estate by operation of Section 541.

*In re Cooley*, 87 B.R. at 441. In essence, the *Cooley* court read the exclusionary language of Section 541(a)(6) to insulate all earnings by an individual debtor *vel non*, while the balance of that subsection could be used to "pare off" assets which could be shown to spring from sources other than the individual debtor's earnings. It would be up to creditors to both raise the issue and prove up the "attribution." The court observed that this approach, in addition to being what it believed to be a more faithful reading of the plain meaning of the statute, also furthered two other policies. First, it furthered the individual debtor's fresh start. Second, it guarded against potential conflict with the Thirteenth Amendment's prohibition on involuntary servitute. *Id.*

### 3. *Problems with Cooley and FitzSimmons*

In the view of this court, the statutory construction adopted by both *Cooley* and *FitzSimmons* reads past the plain meaning of Section 541(a)(6), and similarly overlooks the plain thrust of Section 541(a)(7). In addition, the approach of these cases results in the construction of a special set of rules of interpretation for chapter 11 cases involving individuals (including sole proprietorships), when a much simpler, more harmonious (and hence preferable) rule that would apply equally to all chapter 11 debtors, regardless of legal form, is available. The approach of *Cooley* and *FitzSimmons*

---

**2.** It is worthy of some small note that counsel for the debtor here advanced the position of the

creditor in the *Cooley* case.

also improperly glosses over the important interplay of the individual debtor's dual role as income generator and "trustee" (i.e., debtor-in-possession). We look first at Section 541(a)(6).

### a. Section 541(a)(6)

■ Section 541(a)(6) states that "[p]roceeds, product, offspring, rents, or profits of or from property of the estate ..." are property of the estate. 11 U.S.C. § 541(a)(6). For example, rents generated by an apartment complex owned by the estate are property of the estate by virtue of this subsection. So are the sales income of the "mom and pop" grocery store, the oil and gas income of a multinational oil company, or the proceeds from the sale of a farmer's alfalfa crop.

The subsection backs out of the estate "*such* [proceeds, product, offspring, rents and profits] as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). Thus, if an individual debtor, by his services performed post-petition, has *earned* (not generated) some portion of the proceeds, profits, rents, etc., of or from the estate's property, then that portion will not be included as property of the estate.

The precondition to getting to this "backout" exception for personal service earnings is that the monies in question be "of or from property of the estate." In other words, contrary to *Cooley*, this backout language simply does not apply if the monies in question are not in the first instance proceeds, etc. "of or from property of the estate."[3] This is the clear import of the plain language of the statute. Section 541(a)(6) is one of seven subsections which define under what, if any, circumstances various interests become property of a bankruptcy estate. The role of Subsection (a)(6) is restricted to a discussion of proceeds, etc. "of or from property of the estate." The exception clause is contained *within* this provision, and commences "except *such* as are earnings from services performed ..." The word "such" can only refer to the "proceeds, [etc.] of or from property of the estate" referenced in the first part of the subsection. Earnings from services which are *not* proceeds, etc. of or from property of the estate in the first place are not governed by the exception clause in subsection (a)(6).

Thus, a doctor's billings, a lawyer's billings, a dentist's billings—indeed the billings of virtually any service-oriented enterprise fall *outside* the plain language of Section 541(a)(6). These are earnings by the debtor, to be sure, but they are not "proceeds, product, offspring, profits, or rents of or from property of the estate." Therefore, the "earnings exception" does not apply to them and they are not excluded from the estate by that exception, contrary to *Cooley* and *FitzSimmons*.

So, Section 541(a)(6) is not the general exclusion for post-petition wages and salary for which it is so often cited. Its role is narrower. If that subsection does not govern personal service income in the service enterprise cases, however, then what does? We turn to the more general provisions of subsection (a)(7) for guidance.

### b. Section 541(a)(7)

■ Section 541(a)(7) states that property of the estate includes "[a]ny interest in property that *the estate* acquires after the commencement of the case." 11 U.S.C. § 541(a)(7) (emphasis added). To understand and appreciate the full sweep of this relatively straightforward provision, especially in the chapter 11 context, it is important to evaluate the concept of a bankruptcy *estate*.

Upon a voluntary chapter 11 filing, a bankruptcy "estate," is called into existence by the debtor. 11 U.S.C. §§ 301, 541, 1101. An estate is a separate legal identity, created on (and by) the filing of a bankruptcy petition, and continuing until confirmation, conversion, or dismissal of the case. 11 U.S.C. §§ 541(a), 1112. As such, an estate is more than just its property. It is an active legal *enterprise*, comprised of

---

**3.** *Cooley* made the backout exception the general rule, and the "proceeds, [etc] of or from property of the estate" the exception. The facial structure of the statute does not support this approach.

that property, to be sure, but also operating under the aegis of the Bankruptcy Code. It can sue or be sued. It can buy and sell property. 11 U.S.C. § 363. It can operate a business. 11 U.S.C. § 1108. It has a defined lifetime, at the conclusion of which assets are appropriately disposed of, in accordance with applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1141. A chapter 11 estate has an operating officer, who also serves as trustee for the estate. In the usual case, that operating officer/trustee is the debtor itself, as "debtor-in-possession." 11 U.S.C. §§ 1101, 1107.

Until confirmation, conversion or dismissal, this trustee is permitted to "operate the debtor's business." 11 U.S.C. § 1108. In chapter 11, the debtor, during this financial reorganization effort, both commands (as trustee) and works for (in the pursuit of the debtor's business) the bankruptcy estate. The debtor thus continues in business, operated by the debtor-in-possession (or a trustee, if one has been appointed) and the enterprise thus generates income postpetition.

There can be no "part" of a debtor that is not "in bankruptcy" during the pendency of a chapter 11 proceeding. For example, when an aircraft manufacturer builds a plane, then leases it out and generates lease income, or sells it outright, everything generated belongs to the estate—the cash sale price, the profit, the excess income from leasing—everything. When a supermarket sells groceries, or an insurance agent sells insurance, or a hospital sells hospital care, or fundamentalist ministry sells "time-shares" in its theme park, no one could seriously question that all the revenues generated become property of the estate. When Texaco filed bankruptcy,

there was no part of Texaco which could be identified as a matter of fact or law as operating "outside the bankruptcy." All of its employees, from its chairman of the board to its roustabouts and service station operators, were working for the bankruptcy estate during the pendency of the reorganization. All aspects of Texaco's operations were protected by the automatic stay, but all aspects were also accountable to the bankruptcy process.

All the earnings of an enterprise during bankruptcy, regardless of source, must of necessity be "an interest in property" acquired by the estate after the commencement of the case, because the debtor's business is operated by the debtor-in-possession, the trustee of the estate.[4] All postpetition earnings of the enterprise logically fall neatly into Section 541(a)(7) as "interest[s] in property acquired by the estate during the pendency of the bankruptcy." 11 U.S.C. § 541(a)(7).

This obvious conclusion causes no difficulty to anyone when the earnings in question are generated by a corporation in bankruptcy (e.g., Texaco), yet apparently offends the sensibilities of courts when it is an individual in bankruptcy doing the earning.[5] It should not, though. Certainly nothing in subsection (a)(7) itself suggests that the rule should be any different, merely because the form of the enterprise operated by the estate is a sole proprietorship.[6] There are other provisions which adequately address the question of an individual debtor's compensation during the pendency of the chapter 11 case. *See* 11 U.S.C. § 503(b)(1)(A); *see also* discussion *infra.*

Section 541 simply achieves the relatively basic congressional aim of casting a broad jurisdictional net over the interests in property that should justifiably be subject to

---

**4.** It is not difficult to see why such a provision was needed. Were the income generated *not* property of the estate, it could be distributed, transferred, converted, or otherwise dissipated with virtual impunity, a statutory framework that could only invite serious abuse, regardless whether the debtor were an individual, a corporation, or a partnership.

**5.** *Cooley* especially rankles at the prospect of the individual debtor pressed into working for his

or her creditors and suggests that not even chapter 13 has such onerous consequences. *Cooley,* 87 B.R. at 437; *see* discussion *infra.*

**6.** In fact, the analysis should apply with equal force to the individual chapter 11 debtor *not* doing business as a sole proprietor, though there is less justification for chapter 11 relief in the first place, except to conduct an orderly self-controlled liquidation.

the bankruptcy process. *See United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–05, 103 S.Ct. 2309, 2312–13, 76 L.Ed.2d 515 (1983). Subsection (a)(7) applies with equal force to all chapters, without distinction. 11 U.S.C. § 103. It also draws no distinction among the forms of enterprises involved, be they corporate, partnership, or sole proprietorships.

This court shares the *Cooley* court's reluctance to engraft exceptions onto Section 541, especially when the statute seems to work just fine without such judicial modifications. *See In re Cooley*, 87 B.R. at 439. Section 541(a)(7) thus brings all the earnings of the enterprise between the filing and the confirmation, conversion or dismissal of a chapter 11 case into the bankruptcy estate—even if the enterprise doing the earning is a sole proprietorship, and even if the income is generated by the debtor's personal services in a service-oriented enterprise such as the practice of medicine, law, or dentistry.[7]

c. The individual debtor's dual role

Both *Cooley* and *FitzSimmons* fail to take into account the significance of the relationship between the debtor and the estate created by a chapter 11 filing, a factor which affects (or should affect) the way one views this issue. Both cases appear to give short shrift to the fiduciary obligations imposed by Section 1107.

As earlier noted, the estate enterprise has an operating officer, a "trustee" with a fiduciary obligation owed to the estate's beneficiaries, its unsecured creditors. *In re Gem Tire & Service Co.*, 117 B.R. 874, 877 (Bankr.S.D.Tex.1990); *In re Q.P.S., Inc.*, 99 B.R. 843, 845 (Bankr.W.D.Tenn. 1989); *see also In re San Juan Hotel Corp.*, 71 B.R. 413, 442 (D.P.R.1987). In a chapter 11 case, it is the debtor-in-possession who assumes this obligation (unless a trustee is appointed under Section 1104). *In re Q.P.S., Inc.*, 99 B.R. at 845; 11 U.S.C. § 1107.[8] The debtor first submits all of his property to the newly-created estate, then assumes the role of trustee over the management and utilization of those assets. He also makes executive decisions for the operation and administration of the estate. For example, he decides what causes of action to pursue or to settle, what avoidance actions to initiate or refrain from initiating, what claims to contest or not to contest, and what property will or will not be assembled into the estate. *Jones v. Chrysler Credit Corp.*, 417 So.2d 425 (La.App. 1st Cir.1982), *cert. den.*, 420 So.2d 456, *cert. den.*, 459 U.S. 1114, 103 S.Ct. 747, 74 L.Ed.2d 966 (standing to sue and be sued); *U.S., Inc. v. A.J. Hollander Co.*, 69 B.R. 771 (E.D.Mich.1986) (administration of accounts receivable); *In re Afco Dev. Corp.*, 65 B.R. 781 (Bankr.D.Utah 1986) (administration of estate).[9] He may hire professionals to assist him in his tasks. 11 U.S.C. § 327. In the meantime, he may develop a plan to repay creditors, a plan which may well stretch creditors' payout over an extended period of time, or under which he may assume exclusive control over a liquidation of those assets. 11 U.S.C. §§ 1121, 1123.

In short, the debtor-in-possession enjoys considerable power and benefits in his role as trustee over his own assets. On top of it all, both the debtor and the estate are protected by the automatic stay during the pendency of the reorganization. 11 U.S.C. § 362(a).

By the same token, the debtor-in-possession in chapter 11 assumes the substantial

---

**7.** The debtor has argued correctly that, but for the debtor's efforts, none of the dollars would be generated, even though it may take the assistance of staff people to make the income generation possible. The court accepts this truism, but notes that, under the analysis adopted here, it is an irrelevant truism.

**8.** (a) Subject ... to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights ... and powers, and shall perform all the functions and duties ... of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a).

**9.** The power of the trustee/debtor-in-possession lies not only in the authority to perform these tasks and to pursue these causes of action, but also in the discretion *not* to. That discretion is to be exercised for the benefit of the estate and its beneficiaries, *not* for the benefit of the trustee.

duties and responsibilities of a trustee. *In re Q.P.S., Inc.*, 99 B.R. at 845; 11 U.S.C. § 1107. For example, the debtor-in-possession must account for all of the estate's property. In the operation of the debtor's business, he is also accountable to the estate' beneficiaries, his creditors, and may be "removed from office," as it were, and be replaced by a trustee if he fails to responsibly discharge that responsibility. 11 U.S.C. §§ 1104(a), 1107;[10] *Stein v. United Artists Corp.*, 691 F.2d 885 (9th Cir.1982); *Matter of Halux, Inc.*, 665 F.2d 213 (8th Cir.1981). The court may also, on motion of a party, dismiss or convert the case if the debtor is suffering continuing losses without prospect for reorganization. 11 U.S.C. § 1112(b)(1). The debtor-in-possession also reviews claims, and has an obligation to object to those claims which should not be allowed by the terms of the Bankruptcy Code. That duty extends to administrative claims asserted under Section 503 as well as to unsecured claims under Section 502.

▆▆▆ The debtor-in-possession, as trustee, operates the debtor's business. 11 U.S.C. § 1108.[11] In that capacity, the debtor-in-possession may hire (or retain) personnel to operate that business. During the interval between filing the petition and plan confirmation all persons working on behalf of the debtor-in-possession are in fact employees of the estate for so long as the entity is in bankruptcy. The bankruptcy court has the authority to regulate the employment and compensation of persons who are employed by a bankruptcy estate. *In re Amarex, Inc.*, 853 F.2d 1526 (10th

Cir.1988); *In re Sweetwater*, 57 B.R. 354 (D.Utah 1985). Section 503(b)(1)(A) contemplates the allowance of actual, necessary costs and expenses of preserving the estate, "including wages, salaries or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A). The debtor-in-possession, as trustee, is responsible for assuring that the estate incurs only actual, necessary costs and expenses, and has a duty to object to claims which exceed this standard. *See* 11 U.S.C. § 1107(a).

▆▆▆ When the enterprise which files is a sole proprietorship, the foregoing observations take on a special significance, because the person filling the fiduciary role of debtor-in-possession is also *working for* the debtor-in-possession conducting the debtor's business. As a general rule, a fiduciary's engaging in self-dealing or appropriating estate benefits for personal gain is not permissible. *In re Q.P.S., Inc.*, 99 B.R. at 845; *In re Lowry Graphics, Inc.*, 86 B.R. 74 (Bankr.S.D.Tex.1988); *see also In re San Juan Hotel Corp.*, 847 F.2d 931 (1st Cir.1989). In the chapter 11 context, the debtor as debtor-in-possession must reconcile this duty with his self-interested role as the entrepreneur operating the business of the enterprise. As trustee, the debtor-in-possession has an obligation to the estate's beneficiaries[12] to keep operating costs down while maximizing dividends. As an employee, of course, the debtor's self-interest in making money is usually paramount. Given a conflict between the two roles, the higher duty of the debtor as trustee/fiduciary must take

**10.** (a) At any time after the commencement of the case ... the court shall order the appointment of a trustee—
(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management ... or similar cause ...
11 U.S.C. § 1104(a)(1).

**11.** Section 363(c)(1) lets the debtor-in-possession enter into transactions for the use, sale, lease or other disposition of estate property in the ordinary course of the debtor's business. Section 364 permits the debtor-in-possession to obtain unsecured credit and to incur unsecured debt in the ordinary course of that business. Transfers of estate property (such as the payment of estate

income to persons working for the estate in the ordinary course of the debtor's business) are not avoidable under Section 549 so long as they are "authorized under [Title 11] or by the court." 11 U.S.C. § 549(a)(2)(B).

**12.** Outside of bankruptcy, the relationship of the debtor to his creditors is governed by principles of commercial law and the marketplace, where no fiduciary obligations are, in the usual instance, owed. It is chapter 11 bankruptcy itself which fundamentally alters the relationship of the debtor to his creditors, converting it into a fiduciary relationship by operation of Section 1107.

precedence over the more more self-interested concerns of the debtor as employee. Regardless of the entrepeneurial considerations which obtained prior to bankruptcy,[13] once bankruptcy is filed, a whole new set of rules must apply—rules derived from the vested interests of third parties (creditors) and the fiduciary duties imposed upon the debtor *qua* debtor-in-possession. The fiduciary duties which the debtor assumed by filing chapter 11 must result in *self-imposed* limitations on self-compensation. The inherent self-dealing and appropriation of estate opportunity for personal gain are otherwise antithetical to the debtor's discharge of his fiduciary obligations as debtor-in-possession. *See In re Donovan & Schuenke v. Sampsell,* 226 F.2d 804, 812 (9th Cir.1955); *In re Exennium,* 23 B.R. 782, 787 (Bankr. 9th Cir.1982).

Were the debtor a corporation wholly owned by an individual who also served as the corporation's principal employee, we would not question a creditor's challenging the wages which that person was drawing out of the debtor corporation. That the enterprise which files bankruptcy happens to be a sole proprietorship rather than a corporation should not make a difference. If anything, the creditor has even greater justification for being concerned in the case of a sole proprietorship because of the inherent danger of self-dealing and appropriation of estate opportunity for personal gain.[14]

The dual role of debtor as trustee and debtor as employee in the sole proprietorship chapter 11 lends further support to the statutory analysis adopted by this court. In the pursuit of his fiduciary duties, the doctor, lawyer, dentist or other service professional who files chapter 11 bankruptcy will curtail withdrawing anything more than a reasonable "salary" from the estate in compensation for his services as "employee" during the pendency of the chapter

11—or will justifiably be forced to by his creditors.

Any interpretation of the statute which fails to take this dual role of the individual chapter 11 debtor into account not only underestimates the fiduciary role of the debtor-in-possession but also undercuts the integrity of the bankruptcy process. The approach adopted by this court preserves the integrity of the process by imposing on the individual debtor the same expectations as are placed on corporate and partnership debtors in chapter 11. In so doing, it also spares us from having to invent special judicial exceptions to the plain language of the statute for individual debtor cases. That is certainly a desirable outcome.

### d. The debtor's "salary"

■ The conclusion we reach here about an individual debtor's income generated post-petition and preconfirmation being part of property of the estate does *not*, of course, mean that the individual debtor is expected to work for the estate for free. The debtor justifiably expects to be paid for services rendered to the estate. Indeed, the Bankruptcy Code contemplates that the estate will incur expenses in its operations, including the wage and salary expenses associated with the estate's income production. 11 U.S.C. §§ 1108, 503(b)(1)(A). To the extent that compensating the debtor for contributing to the income production process is itself "in the ordinary course of the business of the debtor," that compensation is permitted.

In fact, the legislative history to Sections 503 and 541 anticipated that, in the case of a sole proprietorship, the debtor would draw a salary, subject to Section 503(b)(1)(A). *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 355 (1977), U.S.Code Cong. & Admin.News 1978, 5787, 5963, 6310 (wages, salaries and commissions for services rendered after the commencement of

---

**13.** Including that honored principle of capitalism that one should be able to keep as much as one is able to make by dint of one's entrepeneurial efforts.

**14.** The *Cooley* and *FitzSimmons* approaches actually exacerbate this problem, because they invite individuals to use chapter 11 to shelter their

income *and* obtain a discharge *and* control the case administration *and* avoid the scrutiny of an independent chapter 7 trustee. The approach adopted by this court, by contrast, encourages responsibility and self-restraint on the part of the debtor-in-possession and discourages abuse.

the case are presumed to be actual, necessary costs and expenses of preserving the estate).

The legislative history also confirms that, once those wages are paid out to an individual debtor out of property of the estate, they are no longer "property of the estate:"

> Postpetition payments to an individual debtor for services rendered to the estate are administrative expenses, and are *not* property of the estate *when received by the debtor.* This situation would most likely arise when the individual was a sole proprietor and was employed by the estate to run the business after the commencement of the case. An individual debtor in possession would be so employed, for example.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 355 (1977), U.S.Code Cong. & Admin.News 1978, 6311 (emphasis added). This is where the "backout exception" in Section 541(a)(6) comes into play. The source of postpetition payments to the debtor *qua* employee of the estate for services rendered is monies generated by the enterprise's activities, which are in turn *property of the estate* by virtue of Section 541(a)(7). The debtor's "salary" thus comes out of "proceeds ... of or from property of the estate," triggering the precondition which *now* permits us to use the backout exception for personal service income in Section 541(a)(6): "except such [proceeds] as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6).

We have thus come full circle, and arrived at a coherent, harmonious interpretation of the applicable statutes without having to invent special rules for individuals who file chapter 11. That result is in turn consistent with the clearly expressed congressional intent that Chapter 11 be a form of general relief, affording the benefits of

reorganization to a wide spectrum of enterprises from sole proprietorships to publicly traded multinational corporations. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 205–09 (1977), U.S.Code Cong. & Admin. News 1978, 6165–6171. In this court's view, that is far preferable to forays into judicial amendment of the Bankruptcy Code.

### B. Objections to proposed analysis

#### 1. *The involuntary servitude shibboleth*

■ The debtor has argued that the interpretation espoused in this opinion effectively places the debtor into involuntary (or at least indentured) servitude. The argument overlooks that this bankruptcy was itself a voluntarily initiated proceeding which carries with it certain burdens. *See, e.g.,* 11 U.S.C. §§ 521, 341, 1125.[15] Because the debtor-in-possession operates the debtor's business, another of those burdens happens to be that, for the duration of the case, the debtor is working for the estate rather than himself. *See* 11 U.S.C. § 1108. This arrangement does not implicate the Thirteenth Amendment, which prohibits peonage, but not voluntary service or labor "in payment of a debt." *Pollock v. Williams,* 322 U.S. 4, 9, 64 S.Ct. 792, 795, 88 L.Ed. 1095 (1944); *Clyatt v. United States,* 197 U.S. 207, 215–16, 25 S.Ct. 429, 430, 49 L.Ed. 726 (1905).

It is true that the debtor cannot dismiss his case as of right once the chapter 11 is filed, but that does not render the proceeding itself peonage or involuntary servitude, any more than would the federal government's levying on wages to collect unpaid taxes constitute impermissible enslavement. *Beltran v. Cohen,* 303 F.Supp. 889 (D.C.Cal.1969). The debtor is presumed to be aware of all the ramifications of a chapter proceeding before voluntarily submitting himself to the regimen. One of those

---

15. *See also* Bankr.R. 1007 (obligation to file verified schedules of assets and liabilities); Bankr.R. 2003 (obligation to attend first meeting of creditors); Bankr.R. 2004 (obligation to submit to examinations by parties in interest); Bankr.R. 2015 (duty of debtor in possession to keep records and file monthly operating reports); Bankr.R. 3016 (obligation to prepare and file a disclosure statement); Bankr.R. 4002 (obligation of debtor *qua* debtor to submit to examinations, attend discharge and dischargeability trials, assist the trustee in locating estate assets, preparing an inventory, objecting to claims, and administering the estate).

ramifications flows out of the interplay between Section 1112(a) and Section 1108. A voluntary petition is not compelled in any legal sense, nor does one have a constitutional right to file bankruptcy. The fact that one volunteers to work for one's creditors for a period of time in exchange for the benefits that flow from a chapter 11 case is no more remarkable than, say, a lawyer's having to accept criminal appointments for little or no compensation as part of the price of admission to practice before the federal bar of this district.

Besides, the individual debtor is not *compelled* (in the peonage sense) to work for the estate. The debtor has a variety of options. He can effectively shelter his current income from creditors by converting the case to chapter 7 as of right, under Section 1112(a), immediately excusing him from "working for the estate." *In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969 (Bankr.E.D.Pa.1987). Or he can choose to file under that chapter in the first place. There is nothing particularly remarkable about the fact that the choice of chapters involves a trade-off of benefits and burdens. There is certainly nothing unconstitutional:

> A clear distinction exists between peonage and the voluntary performance of labor or rendering of service in payment of a debt. In the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor, to an action for breach of that contract, can elect at any time to break it, and no law or force compels performance or a continuance of service.

*Pollock v. Williams*, 64 S.Ct. at 795 (quoting *Clyatt v. United States*).

The debtor points out that the interpretation must fail because of the constitutional ramifications of such a ruling in an involuntary chapter 11 case initiated by one's creditors. 11 U.S.C. § 303(a); *see In re Cooley,*

87 B.R. at 438–39. In that situation, maintains the debtor, a debtor *would* be forced into involuntary servitude in violation of the Thirteenth Amendment. U.S. Const., amend. XIII.

The Thirteenth Amendment is not implicated so long as the law in question does not "compel[ ] performance or a continuance of service." *Clyatt v. United States,* 25 S.Ct. at 430. If a trustee has been appointed in the involuntary case, nothing in the Bankruptcy Code compels the debtor to work for that trustee.

■ If no trustee has been appointed, the debtor could himself move for the appointment of a trustee, effectively refusing to accept "appointment" as debtor-in-possession. 11 U.S.C. § 1104.[16] Section 1104(a) requires the court to appoint a trustee if cause is shown. The involuntary debtor would rightfully argue that one cannot be compelled to serve in a fiduciary capacity against one's will. If the debtor refuses to act as debtor-in-possession, then a trustee logically *must* be appointed. The debtor would in that event, as noted above, be under no legal compulsion to work for the trustee.

The involuntary debtor could also justifiably argue that he simply does not desire to work for the estate, and that neither a trustee nor the court can make him, based on the Thirteenth Amendment, and the court could do little but accede. *Pollock v. Williams, supra; Clyatt v. United States, supra.* However, the court also could no longer leave the debtor in possession under such circumstances, and would likely have sufficient cause to mandate the appointment of a trustee. That is simply an economic consequence flowing from the debtor's decision, no more remarkable than suffering a judgment for breach of contract for breaking an employment agreement. *Clyatt v. United States, supra.*

---

16. There should be little doubt that the debtor would be a party in interest for purposes of Section 1104. The term is flexible, intended to be adopted to the exigencies presented and the purpose of the statute in which the term is used. As a general principle, one is a party in interest if one has an actual stake in the outcome of the matter. *In re Amatex, Inc.*, 755 F.2d 1034 (3rd Cir.1985). As a party in interest, of course, the debtor would have standing to bring the motion. *See* 11 U.S.C. § 1104(a).

The involuntary servitude argument, in short, is little more than a shibboleth. The debtor always has the keys to the shackles. Economic necessity may discourage him from freeing himself, but is hardly the equivalent a law or force compelling performance or continuance of service in violation of the Constitution.[17]

### 2. *Noncompliance by debtor*

[11] The debtor has indicated that, if this ruling holds, he will simply "go across the street," as it were, and set up shop in competition with the estate. While there is no law which could prevent the debtor from exercising this option, there are severe consequences which might discourage it. By going into competition with his own estate, the debtor will have breached his fiduciary obligations to the estate, endangering if not in fact abandoning his entitlement to relief under chapter 11. *Stein v. United Artists Corp.*, 691 F.2d 885 (9th Cir.1982); *In re San Juan Hotel Corp.*, 71 B.R. 413 (D.P.R.1987), *rev'd on other grounds*, 847 F.2d 931. A motion to convert or to appoint a chapter 11 trustee would no doubt be immediately and summarily granted under such circumstances. A debtor in possession simply cannot ignore his fiduciary obligations by putting his own interests before those of his beneficiaries, the creditors. *In re Q.P.S., Inc.*, 99 B.R. 843 (Bankr.W.D.Tenn.1989). He simply cannot lightly appropriate estate opportunities, or engage in self-dealing activities without in the process risking loss of all the benefits of chapter 11. *In re Q.P.S., Inc.* 99 B.R. at 845. To boot, a debtor who made so foolhardy a choice would no doubt buy himself a massive lawsuit premised on his breach of his fiduciary obligations. Such a choice might even endanger his discharge. *See* 11 U.S.C. § 727(a)(2)(B).

None of these consequences lead this court to conclude that its interpretation is anything but the right result. A debtor has a variety of options available and each has its consequences. If the debtor does not want to work for his creditors, he can choose another chapter. If the debtor elects to "thumb his nose" at his creditors by going into competition with his own estate, he can do so and brook the lawsuit that will surely follow as one of the consequences of such brazen arrogance. These are all acceptable outcomes, so far as this court is concerned. If anything, they support the interpretation of the statute which this opinion espouses.

### 3. *Impact on "fresh start"*

The debtor asserts, following *Cooley*, that dedicating any portion of the income generated by the individual debtor to the estate undercuts the debtor's "fresh start." The Bankruptcy Code does not explicitly grant a fresh start to debtors, though its structure is such that it certainly promotes it. However, in a chapter 11 case, most of the benefits of the fresh start are deferred to confirmation. The discharge is only entered upon confirmation of the plan. 11 U.S.C. § 1141. The automatic stay certainly protects the debtor (as well as the estate and its assets) from collection activity for the period preceding confirmation, but the fresh start for the chapter 11 debtor does not begin to take effect until the automatic stay is extended by the permanent injunction of Section 524.

Obviously, certain features of the fresh start "kick in" prior to confirmation. Exempt property, for example, is determined within thirty days of the first meeting of creditors, absent an objection. 11 U.S.C. § 522(*l*); Bankr.R. 4003(b). In general, however, the fresh start policy, so paramount in chapter 7, is subordinated in chapter 11 to the more specific goal of reorganization. Thus, the debtor is still (in the voluntary case) wedded to the bankruptcy process by virtue of his role as debtor-in-possession. The debtor-in-possession *operates the debtor's business*, a concept completely antithetical to the notion that the

---

**17.** It has been held that, "when only the amendment itself is concerned absent any statute [enacted pursuant to the amendment, such as the civil rights laws] the amendment is given a very narrow interpretation as to what constitutes the badges and incidents of slavery." *Arnold v. Board of Education of Escambia County, Alabama*, 880 F.2d 305, 315 n. 12 (citing *Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981)).

debtor is "starting afresh" free of creditor claims. 11 U.S.C. § 1108. A creditors' committee may well scrutinize the operation of that business in chapter 11, and may even decide to put someone else in charge via a motion to appoint a trustee, to seek to convert the case to chapter 7 liquidation, or to propose their own plan. Until confirmation of a plan, it is premature to speak of a debtor's fresh start.

The ruling of the court on this issue thus does not undermine the debtor's fresh start, because in chapter 11 it is largely deferred until after confirmation. If anything, the ruling prevents the debtor from grabbing a "head start" by collecting unrestricted income while under the protection of chapter 11 and the automatic stay.

### 4. *Inconsistency with Chapter 13*

Not raised by any party, but suggested by a recent case out of Indiana, is the statutory argument that our interpretation is inconsistent with Section 1306. Chapter 13, by special provision, makes postpetition wages property of the estate. 11 U.S.C. § 1306. Goes the argument, were our interpretation correct, there would be no need for this special provision because Section 541(a)(7) would already incorporate postpetition earnings into the estate.

That is not true, though. First (and most obviously), our interpretation of Section 541(a)(7) only picks up as property of the estate income generated by *the estate*. Debtors in chapter 13 cases are, by definition, *wage earners*, i.e., they are not working for the estate—they are working for third parties. Section 541(a)(7) does not apply to these wages and, but for the operation of Section 1306, such wages would not be included in the chapter 13 estate.

Even if wages *were* picked up by Section 541(a)(7), they would cease to be included in property of the estate *upon confirmation*. Section 1306, by contrast, extends the concept of "property of the estate" to wages earned by the debtor *until the case is closed, dismissed or converted* to another chapter, a point far *beyond* confirmation in chapter 13. Thus, contrary to *FitzSimmons*, Section 541(a)(7) would be inadequate to meet the special needs of chapter 13, which requires that wages be committed for an extended period of time (three years or longer) but which also requires that confirmation take place relatively early in the case. *See In re Mack*, 46 B.R. 652 (Bankr.E.D.Pa.1985); *In re Denn*, 37 B.R. 33 (Bankr.D.Minn.1983).

In chapter 11, the estate ceases to exist on confirmation, and property is re-vested in the debtor. 11 U.S.C. § 1141. Effective upon confirmation, all the income generated by the debtor thus ceases to be property of the estate. In chapter 13, the concept of property has been considerably expanded by Section 1306 to include post-confirmation wages extending for years after confirmation. That special provision does not undercut our interpretation of Section 541(a)(6) and (7).

Also worth noting is that Section 1306 makes earnings from services performed by the debtor property of the estate up to the point the case is closed, dismissed, or *converted* to another chapter. 11 U.S.C. § 1306(a)(2). The *FitzSimmons* court relied on this provision to argue that Congress knew how to include income from personal services as property of the estate, adding that there is no similar provision in other chapters or in Section 541 itself. Implicit in this argument is the notion that, because there is an express provision for postpetition income in Section 1306, there is an implied exclusion in the other chapters. Goes the argument, the earnings in chapter 13 case that are property of the estate cease to be property of the estate when the case is converted to another chapter, such as chapter 11. Therefore, such earnings would not be property of the estate in chapter 11.

This argument reads too much into Section 1306(a)(2), which merely defines the end point for the chapter 13 estate (upon closing, dismissal, or *conversion* of the case to a *different* chapter). Congress did *not* say anything about whether the wages which were property of the estate in chapter 13 would or would not be property of the estate in any *other* chapter. What most clearly demonstrates this is that, even

though Section 1306(a)(2) specifically terminates the chapter 13 estate's interest in earnings upon conversion to *chapter 12,* chapter 12 itself *also* includes earnings from services performed by the individual debtor after the commencement of the case for a period of years. 11 U.S.C. § 1207(a)(2). Section 1306 places no limit on the chapter 12 definitions of estate property. There is no reason to read it to place a limit on chapter 11 estate property either.

### 5. *Valuation*

██ The debtor's next contention is that this court's interpretation of property of the estate imposes an impossible valuation problem on both the parties and the court. In fact, however, the valuation question is easier to resolve under this court's interpretation than under the *Cooley* and *Fitzsimmons* approaches. Both of these courts assumed that we must start our inquiry by asking what monies are attributable to "personal services" (*FitzSimmons*) or to "earnings of the individual" ("*Cooley*"). These approaches require the court to devise tests for isolating these funds from the balance of the estate's income.[18]

Under our interpretation, this sort of question is not even asked. Our analysis follows a two step process. First, we ask "what monies are generated by the estate?" Second, we ask "what funds should be paid over to the debtor in compensation for his or her services to the estate?" We

are no longer constrained to anguish over whether monies are generated by personal goodwill as opposed to enterprise goodwill, as did the *FitzSimmons* and *Cooley* courts. Our task is, by comparison, relatively simple. We merely decide how much to pay the debtor for services performed. That analysis is controlled by Section 503(b)(1)(A), which advises, in essence, that actual and necessary costs may be allowed as an off-the-top administrative expense. 11 U.S.C. § 503(b)(1)(A). It is a task upon which courts have embarked before in corporate and partnership cases. The approach need be very little different in the individual debtor case.[19]

There are two approaches that might be taken to determine what expenses are actual and necessary. One assumes that all wages are *prima facie* actual and necessary. The other assumes that wages should conform to a standard of "reasonableness," defined by a community in turn determined by the court. This latter approach posits that, if an expense is unreasonable, it is certainly not necessary (even though it might be actual). Under this latter approach, the court would hear testimony concerning ranges of compensation for similar performance and from this testimony would decide on the level of compensation. That is the approach adopted in this case.

██ After consideration of the testimony taken at the hearing[20] the court concludes that Dr. Herberman should receive

---

**18.** In the view of this court, those tests are cumbersome and unpredictable, because they require a court to seek out sources for the revenue other than the professional. In fact, that inquiry is highly artificial and yields odd results. For example, all would agree that the receptionist needs a desk, but how much revenue does the desk yield? What proportion of the total revenues are attributable to the desk? The inquiry borders on the ludicrous, yet is little different from asking the same sorts of questions about the receptionist himself, or the radiologist, or the associate in a multi-doctor practice (such as was the situation in *Cooley*).

**19.** In fact, the approach is easiest in the case in which the debtor is *not* a sole proprietor, for there, the debtor is *not* working for the estate, but for some third party. In that case, *all* of the debtor's income is insulated from "property of

the estate" because it is not the debtor's business being operated by the estate. Section 541(a)(7) is thus not implicated.

**20.** This included testimony from three of the nine urologists in El Paso regarding their levels of compensation, the likelihood that anyone would buy another urologist's practice in El Paso, the "open hospital" policy in El Paso, the kinds of hours one must work to generate the levels of income achieved, the relationship between one's surgery practice and one's office practice, the role of other staff, equipment, and facilities in the generation of income, and the repute in which Dr. Herberman is held in the community as a surgeon of some note. The court also considered documentary evidence regarding what a new doctor might be expected to earn.

75% of the total income generated by the practice (after paying expenses of the practice such as utilities, staff salaries, and the like) as his compensation during the pendency of the case. These monies are excluded from the estate when received by the debtor (as they have been here) by virtue of Section 541(a)(6). The balance of earnings are property of the estate for which Dr. Herberman, as debtor-in-possession, must account.

However, since this decision is a departure from established precedent, the court also finds that that portion of the balance of earnings generated between the date of filing and the date the motion under consideration was filed should not become property of this particular estate. Under the state of the case law as of the filing of this case, Dr. Herberman had no reason to anticipate this ruling, and hence no reason to segregate or account for those receipts.

The income produced by the practice after the date the motion was filed is property of the estate. The Cox Group's motion should have put Dr. Herberman on notice that his right to keep all the income from the practice as his own was then in question. He could at that point have reasonably anticipated at least the possibility of an adverse ruling that could result in a disgorgement order.

## CONCLUSION

For the foregoing reasons, all of the debtor's income during the period between filing and confirmation became property of the estate under Section 541 of the Bankruptcy Code. By the same token, Dr. Herberman was entitled to receive compensation for the services he rendered to the estate during this period. Dr. Herberman shall segregate and account for the income which, per this decision, is property of the estate. The debtor's plan of reorganization must in turn take these funds into account in terms of satisfying the requirements of Section 1129(a)(7).

So ORDERED.