**In re R.L. LARSON, a/k/a Raymond Larson, Debtor.**

**Ray LARSON, Plaintiff,**

v.

**Gary CAMERON, Trustee, Defendant.**

**Bankruptcy No. 90–05863.**
**Adv. No. 92–7043.**

United States Bankruptcy Court,
D. North Dakota.

Oct. 2, 1992.

See also 143 B.R. 543.

Jay D. Carlson, Fargo, N.D., for trustee/defendant.

Steven Bergeson, Bloomington, Minn., for plaintiff.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

By complaint filed on April 28, 1992, the Plaintiff/Debtor, Raymond Larson, alleges that his options to purchase 10,000 shares of High Plains Corporation (HPC) stock issued to him are compensation for his services as a director of HPC. As such, the stock options are wages and therefore excluded from the property of the estate pursuant to 11 U.S.C. § 541(a)(6). The trustee disagrees and asserts that the stock options are not wages, but are contractual rights Larson acquired prior to his bankruptcy filing.

Trial was held on September 8, 1992. From the evidence produced at trial, the facts as material are as follows:

### Findings of Facts

Larson, over the last 25 years, has been self-employed in various enterprises. In 1980, he co-founded HPC and served as one of its directors from March 1981 to April 1982, from April 1983 to March 1986, and from May 1987 to April 1992. In a letter dated July 12, 1990 from HPC's president, it was proposed that each director of HPC would be issued options for 10,000 shares of company stock "for remuneration of their involvement in HPC for the fiscal year ending June 30, 1991." On July 16, 1990, Larson, as a director of HPC, was issued such options to purchase HPC stock at $1.75 per share. Also, in a notice of HPC's Annual Meeting of Shareholders held on December 11, 1990, it states that Larson was issued 10,000 shares of HPC common stock in lieu of director's compensation. Shortly after the issuance of the stock options, Larson filed for Chapter 11 relief on October 16, 1990. On July 22, 1991, his Chapter 11 case was converted to a Chapter 7.

By the time Larson filed his bankruptcy petition, the market price per share of HPC stock had increased to $5.50. As of August 31, 1992, the HPC stock again increased in value and was trading at $10.25 per share.

Approximately four months after the Chapter 7 conversion, the trustee, on December 6, 1991, moved to assume the contract concerning the purchase of the stock options which was objected to by Larson. Larson later withdrew his objection whereupon this court entered an order on February 13, 1992, allowing the trustee to assume the HPC stock options. As a result, this adversary proceeding ensued. It is Larson's contention that his options to purchase HPC stock are wages he earned postpetition as a director of the corporation, and therefore, the trustee may not assume the contract which was never property of the estate in the first place.

At trial, Larson testified that it was normal HPC policy to reimburse its board members with stock options in lieu of director compensation. He also testified that it was his belief that he had a legal right to

exercise the options anytime after the issuance date, so long as he exercised them within five years after that date. However, upon being further questioned regarding his rights to exercise those options, he responded that he wasn't certain if he, in fact, had any legal right to exercise the options when they were first issued. He did, however, acknowledge that whatever rights he had in the stock options on the issuance date were the same as when he filed his Chapter 11 petition. Irrespective of what his beliefs are, it is uncontested that the options for 10,000 shares of HPC stock were issued to each director for remuneration for their involvement with the corporation and that the options are exercisable at the market price on the day the options were granted.

Despite the fact that the options were exercisable upon their issuance, Larson had not exercised his rights to purchase them. He testified that he felt morally obligated not to purchase the stock options until after he earned them by serving as HPC's director for the full term ending June 30, 1991. Larson further felt that it would not be financially astute for him to exercise the options because of the low price of the stock when they were first issued.

### Conclusions of Law

■ The determination of what portion of a debtor's assets are deemed property of the estate in a converted case is based on the date of the original bankruptcy filing. *In re Harris*, 886 F.2d 1011, 1013 (8th Cir.1989) (citing *Koch v. Myrvold*, 784 F.2d 862 (8th Cir.1986)). Hence, in the case at bar the determination is made on the date Larson filed his Chapter 11 petition on October 16, 1990, and not the date of conversion to Chapter 7.

The scope of the bankruptcy estate under section 541 was intended to be broad. *Garner v. Strauss*, 952 F.2d 232 (8th Cir. 1991); *In re Swanson*, 873 F.2d 1121 (8th Cir.1989). In essence, an estate includes almost any asset or interest of value a debtor has. Section 541(a)(1) provides that an estate comprises of "all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history expresses the intent that tangible and intangible property, causes of action and all other forms of property currently specified in 70a of the Bankruptcy Act are all to be included in the debtor's estate. H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News pp. 5787, 5868, 6323 (1978). *See also, Owen v. Owen*, —— U.S. ——, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991) (An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provision.); *In re Atlantic Business and Community Corp.*, 901 F.2d 325 (3d Cir.1990) (A debtor's mere possessory interest in real property even if unaccompanied by any legal interest, is property of the estate.). However broad the bankruptcy estate was intended to be, section 541(a)(6) expressly provides an exception by excluding earnings from services rendered by a debtor *after* the commencement of the case.[1]

1.

■ At trial Larson testified that the stock options were granted solely because of the services he was to render as HPC's director. He asserts that the stock options are "earnings" in order to invoke the exception of section 541(a)(6). The trustee contends that the options are merely a method employed by HPC to reward its owners, founders and key employees of the company and are not in the form of wages.

In *Matter of Baldwin–United Corp.*, 52 B.R. 549, 551 (Bankr.S.D. Ohio 1985), the court ruled that stock option rights are not in the nature of wages and are "perks"

1. 11 U.S.C. § 541(a)(6) provides as follows:
    (a) The commencement of a case . . . creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

    (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

given to employees to enhance the attractiveness of their employment as well as to increase their personal stake in the welfare of the company. The facts in *Baldwin* are distinguishable from the facts in the present case. In *Baldwin,* the stock option plan specifically provided that the option plan was aimed at increasing company morale and productivity and was not meant to serve as a form of compensation for continuing services rendered. In the case at bar, however, no evidence adduced at trial substantiate that the options were anything but earnings.

Although the trustee characterizes Larson's statement claiming that the stock options are in the nature of wages as self-serving, the letter from the President of HPC suggests otherwise. As the letter noted, the stock options were expressly issued to compensate the directors for their involvement with the corporation. The operative term is "involvement." Being involved with the affairs of HPC does not necessarily mean that a specific task or performance is required. The mere fact Larson is a director is in the court's opinion sufficient to satisfy the term "involvement." As a director, Larson was intimately involved with the corporate planning and management of HPC. Decisions made as a director have a direct bearing on the success or failure of the corporation which would ultimately affect the total amount of compensation received upon option exercise.

For example, the stock options gave Larson the right to purchase at the option price of $1.75 per share. Although Larson might decide to exercise the options at a future date, the right to exercise the options came into existence on the date of issuance. If the market value of the stock should rise, Larson would benefit by the difference. His compensation is based upon the difference between the share price on the issuance date and the value of the shares at the time of exercise. Thus, the value of the options are directly tied to Larson's efforts. The remuneration Larson receives as a director of HPC is a direct result of his services after the commencement of the case, and therefore,

within the exception of section 541(a)(6). This conclusion is supported by *In re Fitz-Simmons,* 725 F.2d 1208 (9th Cir.1984), a case which construed section 541(a)(6) in the context of a sole proprietorship. Rejecting the concept that earnings of a sole proprietorship were excluded from property of the estate, the court held that "§ 541(a)(6) excepts from the proceeds of the estate only those earnings generated by services personally performed by the individual debtor." *Id.* at 1211.

Another indicia that the options issued to Larson were not granted as a "reward" is evidenced by the listings in the Notice of Annual Meeting of Shareholders. In that listing, one director was issued stock options for various reasons, including consideration for his personal guarantee on a line of credit; involvement as a director; and compensation under the company's incentive stock option plan. Had Larson's option shares been intended to be a reward, it would have also been designated as part of the incentive stock option plan, instead, it was only listed as director's compensation. Accordingly, from the discussion above, the court concludes that the stock options are deemed "earnings" within the parameters of section 541(a)(6).

2.

The trustee also contends that there was a contract between Larson and HPC pre-petition—that is Larson would receive the stock options in exchange for his services on the board of directors. According to the trustee, it is the options to purchase the stock that have value, and since the contracts existed at the time of filing, the exercise of the options would be deemed property acquired after the commencement of the case pursuant to 11 U.S.C. § 541(a)(7).

Section 541(a)(7) provides that property of the estate includes "[a]ny interest in property that the estate acquires after the commencement of the case." The trustee cites to *In re Herberman,* 122 B.R. 273 (Bankr.W.D.Tex.1990), in support of his position. *Herberman* involved a Chapter 11 debtor who was the sole proprietor of a

medical practice. The *Herberman* court noted that upon the debtor's chapter 11 filing, an estate is created with an operating officer, who serves as trustee for the estate. Under normal situations, that operating officer/trustee is the debtor itself, as debtor-in-possession. The court further noted that:

> [t]here can be no "part" of a debtor that is not "in bankruptcy" during the pendency of a chapter 11 proceeding.... All earnings of an enterprise during bankruptcy, regardless of source, must of necessity be "an interest in property" acquired by the estate after the commencement of the case, because the debtor's business is operated by the debtor-in-possession, the trustee of the estate. All post-petition earnings of the enterprise logically fall neatly into section 541(a)(7) as "interest[s] in property acquired by the estate during the pendency of the bankruptcy." [citation omitted].

*Id.* at 279. For example, the *Herberman* court explained, when an aircraft manufacturer builds a plane, then leases it out or sells it outright, everything generated belongs to the estate—the lease income, profits and cash sale price. However, the facts in the instant case do not subject Larson to the same treatment as that stated in the *Herberman* decision. An obvious difference between the debtor in *Herberman* and Larson is that Larson is not a sole proprietor. While Larson may be a sole proprietor in his other business endeavors, he is not the sole owner of HPC. It is important to remember that Larson is the individual in bankruptcy and not HPC. The income generated by Larson, a non-enterprise dur-

ing bankruptcy, does not automatically fall within section 541(a)(7)'s "interests in property acquired by the estate during the pendency of the bankruptcy," especially in light of section 541(a)(6).[2]

The court recognizes the interplay between sections 541(a)(6) and 541(a)(7), but cannot ignore the fact that the legislature has specifically chosen to create an exception to the portion of section 541(a)(6) which excludes from property of the estate earnings from services performed by a debtor after the commencement of the case. Accordingly, the court finds that the estate's interest in what stock options Larson acquires after the commencement of a case as noted in section 541(a)(7) is subject to the exception found in section 541(a)(6).

3.

Various courts' treatment of commissions earned by a debtor post-petition under a pre-petition contract may shed some light in the resolution of what extent Larson's options to purchase HPC stock issued pre-petition are excluded from the property of the estate under section 541(a)(6).

Whether the post-petition income of a debtor will be deemed property of the estate is dependent upon whether that income accrues from post-petition services of the debtor. *E.g., In re Bluman*, 125 B.R. 359, 366 (Bankr.E.D.N.Y.1991); *In re Rankin*, 102 B.R. 439, 441 (Bankr.W.D.Pa. 1989); *In re Zahneis*, 78 B.R. 504, 505 (Bankr.S.D.Ohio 1987); *In re Sloan*, 32 B.R. 607, 611 (Bankr.E.D.N.Y.1983). In those cases, the courts concluded that where a debtor derives post-petition commissions under a pre-petition contract, and such commissions are contingent upon the

---

**2.** The *Herberman* court interpreted section 541(a)(6) to require that earnings excepted from property of the estate be earnings from property of the estate. That is, any earnings from services which are not proceeds, product, offspring, rents, or profits of or from property of the estate in the first place are not within the exception clause of section 541(a)(6). Other courts, applying section 541(a)(6) have not restricted the construction of that section so narrowly. Their focus regarding section 541(a)(6) have generally been whether the alleged earnings are accrued from post-petition service. *See, In re Bluman*, 125 B.R. 359 (Bankr.E.D.N.Y.1991) (Insurance policies sold pre-petition are post-peti-

tion earnings excluded from property of the estate if the debtor's right to such proceeds are dependent upon his continuing service.); *In re Rankin*, 102 B.R. 439 (Bankr.W.D.Pa.1989) (Where a debtor derives post-petition commissions which represent payment for services rendered after the filing of the case, the payment do not represent property of the estate.); *In re Cooley*, 87 B.R. 432 (Bankr.S.D.Tex.1988) (Debtor's post-petition earnings were properly excluded from the bankruptcy estate.); *In re FitzSimmons*, 725 F.2d 1208 (9th Cir.1984) (section 541(a)(6) excepts from the proceeds of the estate only those earnings generated by services personally performed by the individual debtor.).

**44**

continued services of the debtor, they are not the property of the estate. However, where the debtor basically realizes all his obligations pre-petition, the post-petition commissions accruing therefrom will be regarded as the estate's property. *Sloan* at 611. In summary "the debtor's income passes to the trustee as property of the estate if all the acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past." *Id.* (citing to *Segal v. Rochelle*, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966)).

As the facts indicate, the stock options were issued on July 16, 1990, for remuneration of Larson's involvement in the fiscal year ending June 30, 1991. Larson filed for Chapter 11 bankruptcy relief on October 16, 1990. From the stock options' issuance date to the date of filing, three months of pre-petition "earning" exists. The said earnings are derived from pre-bankruptcy activities and must therefore be deemed property of the estate. The compensation derived from the remaining period would, however, be considered post-petition earnings and as such are excluded from the property of the estate as they are not rooted in the pre-bankruptcy past. The mere fact that Larson could have exercised his rights to purchase the option shares pre-petition does not automatically mean the options are rooted in the bankruptcy past. As the court has noted in its earlier discussion, the stock options were expressly issued to compensate Larson for his involvement with the corporation. Additional effort on the part of Larson was required to maximize the full earning potential of the options. Not all of the obligations required of Larson, as a director, were fulfilled prior to his bankruptcy petition, rather it was an on-going process which required him to perform up to the end of the fiscal year, June 30, 1991.

Because the stock options, in part, represent compensation for Larson's post-petition services, the court reaches the conclusion that the acts of Larson necessary to earn compensation from October 16, 1990 to June 30, 1991, in the form of stock options, are not rooted in the pre-bankruptcy past, but rather are rooted in post-petition events so as to constitute after acquired property which are not property of the estate.

Thus, the court finds that the trustee's interest in the stock options is limited to a pro rata share equal to 117 days, the days Larson served as a director prior to filing his October 16, 1990, bankruptcy petition. In other words, the estate is only entitled to 32% (117 days/365 days = 32%) of the 10,000 stock option shares, that being 3,200 shares. The remaining 6,800 shares belong to Larson. *See, Matter of Clark*, 891 F.2d 111 (5th Cir.1989) (debtor earned his salary by playing football on a weekly basis rather than by merely attending the preseason camp and therefore, the post-petition payments were not part of the estate); *Zahneis, supra* (commissions which are attributable to post-petition services are not property of the estate).

Accordingly, for the foregoing reasons, IT IS ORDERED that of the 10,000 stock option shares issued to Raymond Larson for remuneration for his involvement with High Plains Corporation in the capacity of a director, 3,200 shares are deemed property of the estate and the remaining 6,800 shares are considered post-petition earnings which are excluded from the estate pursuant to section 541(a)(6) of the Bankruptcy Code.

SO ORDERED.