### In re Anna Wade BOWMAN, Debtor.

### Bankruptcy No. 91–5–2533–SD.

United States Bankruptcy Court,
D. Maryland.

May 5, 1995.

Nelson C. Cohen, Barbara L. Ward, Zuckerman, Spaeder, Goldstein, Taylor & Kolker, Washington, DC, for debtor.

Steven D. Gordon, William J. Dempster, Holland & Knight, Washington, DC, Special Counsel for trustee.

David W. Tonnessen, Chapter 7 Trustee, Baltimore, MD.

Edmund A. Goldberg, Office of the U.S. Trustee, Baltimore, MD, for U.S. Trustee.

Jerald J. Oppel, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Geren Sales, Inc.

## MEMORANDUM OPINION

E. STEPHEN DERBY, Bankruptcy Judge.

The controlling issue before the court is what are the duties of a debtor-in-possession whose only asset is a lawsuit and who is faced with an offer of judgment that is enough to pay creditors, but which the Debtor considers to be inadequate.

### PROCEDURAL HISTORY

Anna Wade Bowman, Debtor, filed her voluntary Chapter 7 petition on April 23, 1991. Debtor was discharged after the Chapter 7 Trustee filed a report of no distribution, and a final decree was entered on October 11, 1991. On the same day as the final decree, Debtor amended her schedules to reflect the existence of an additional asset of the estate, namely, a $400,000 claim against Geren Sales, Inc., t/a GBS, Inc. and Giant Food, Inc.[1]

Asserting that the claim would pay all her creditors in full, Debtor moved to dismiss her bankruptcy case. Rather than dismissing the case, this court, *sua sponte*, vacated the final decree on October 22, 1991 and directed the Chapter 7 Trustee to investigate whether to pursue the claim on behalf of the bank-

---

1. Claims are property of the estate that must be disclosed on a debtor's Schedule B. 11 U.S.C. § 541(a); Bankr.Rule 1007(b)(1). A debtor's knowing and fraudulent failure to report property of the estate to which the debtor is entitled could constitute grounds for revoking a discharge or a bankruptcy crime. 11 U.S.C. § 727(d); 18 U.S.C. §§ 152, 3284. Further, without disclosure Debtor's ability to retain a recovery would have been at risk. The Maryland Court of Appeals has remanded a judgment obtained by a discharged Chapter 7 debtor on his unscheduled claim, because the judgment was property of the bankruptcy estate and the Chapter 7 trustee should be substituted for the debtor as the real party in interest. *Adams v. Manown*, 328 Md. 463, 615 A.2d 611 (1992).

ruptcy estate. On January 30, 1992 this court approved the Trustee's employment of special counsel who had previously represented Debtor to prosecute her claims against Geren Sales, Giant Food, et al. The approval provided that "all negotiations, settlement and fee arrangements" would be subject to the consent of the Trustee. This order was later amended on September 16, 1994 to replace original counsel with a successor firm, due to a merger with special counsel's law firm.

The claim was embodied in an adversary complaint filed on behalf of the Debtor, her company, and the Chapter 7 Trustee on February 24, 1992 against Geren Sales, Inc., t/a GBS, Inc., Giant Food, Inc. and several individuals. Adv. No. 92–5081–SD. On Plaintiffs' motion, the United States District Court for the District of Maryland withdrew reference of the adversary proceeding. The civil action is currently pending as *David W. Tonnessen, Trustee, et al. v. Geren Sales, Inc., t/a GBS, Inc., et al.*, Civil No. PJM–92–849, and it is scheduled for a jury trial during the week of June 6, 1995. Both compensatory and punitive damages are requested.

The individual defendants have been dismissed. Three counts remain: breach of contract against Geren Sales; tortious interference with contractual relationship against Giant Food; and civil conspiracy against both. Defendants have made an offer of judgment in the amount of $500,000, plus costs. FRCP 68; Bankr.Rule 7068. Defendants' counsel have assured the court that the offer of judgment remains open. The Trustee has assumed this offer would be sufficient to pay creditors who have filed timely claims in full, with interest, and to provide a small surplus distribution to the Debtor.

The court agrees that the offer is sufficient to cover the nondischargeable claims of the Internal Revenue Service and the Maryland Comptroller of the Treasury. The Internal Revenue Service is Debtor's largest unsecured creditor, although Debtor denied the existence of tax claims on her schedules and stated on her statement of financial affairs that all tax returns had been filed. However, from evidence produced at a hearing on Debtor's objections to the offer of judgment and from the court's examination of claims that have been filed, it is doubtful that the $500,000 offer of judgment will be sufficient to provide a distribution to Debtor, in part because the tax claims appear to have increased. Further, the tax impact of this offer of judgment has not yet been considered or determined.

The Chapter 7 Trustee determined to reject the offer because he concluded that it would not maximize realization on the claim for the estate and that it was far less than the case was worth. The Trustee countered with a settlement offer of $1,400,000. The Trustee provided notice of his position, and the only two creditors that responded were in support. The IRS did not respond.

Because the district court was "... concerned about the authority of the Trustee to reject a settlement offer which not only would liquidate the claims of all creditors in the underlying bankrupt estate, but would leave a substantial surplus for the debtor," it referred the matter to the bankruptcy court for an appropriate report and recommendation. The two specific issues that the district court requested the bankruptcy court to address were, first, the propriety of the Trustee rejecting the $500,000 offer of judgment and, second, the propriety of counsel for the Trustee continuing as counsel for the Debtor. In responding to the second issue, special counsel wrote a letter filed December 13, 1994 to this court explaining that it "... does *not* continue to represent the debtor" and has not represented the Debtor since the Debtor was dismissed as a party plaintiff. The Trustee took the place of Debtor because all of Debtor's claims arose before her bankruptcy petition was filed.

To address these issues, the bankruptcy court set a schedule for the Trustee to renotice all creditors of his proposed action, with his reasons supporting such action, and for parties in interest to respond. Unexpectedly, the Trustee altered his earlier position and filed a notice that he proposed to accept the settlement offer. The Trustee explained, *inter alia:*

> The trustee realizes his fiduciary responsibility to all respective parties and is cog-

nizant of differing interests among the various parties in interest and has determined that in this particular case the settlement offer is accepted. The possible risk to the creditors of this estate would outweigh the potential increase in the debtor's distribution.

Notice of Trustee's Proposed Acceptance of Settlement Offer of Claims in Litigation, Dkt. 20, p. 2.

Debtor objected to the proposed acceptance as inadequate, and she moved to convert her Chapter 7 case to a Chapter 11 reorganization case. In Debtor's objection she stated that when her case is converted to a Chapter 11, "... it is the intent of the Debtor, as Debtor-in-Possession, to proceed with the litigation, through trial." The IRS opposed conversion, and, alternatively, moved to reconvert to Chapter 7. It urged acceptance of the offer of judgment. The U.S. Trustee and the State of Maryland supported the IRS' position. The two unsecured creditors who had previously supported the Trustee's position to reject the offer did not respond. The litigation Defendants, who lack standing in the bankruptcy estate, provided the bankruptcy court with supplemental memoranda urging acceptance of the $500,000 offer of judgment.

At the bankruptcy court hearing on these issues, special litigation counsel for the Trustee, Steven D. Gordon, Esquire, testified that in his opinion, after factoring in the risks of this litigation, a fair settlement value of the case is $1.4 to $1.6 million. Counsel for Defendant Giant Food, Mark Scott London, Esquire, who was called as a witness by the IRS testified that there were several areas of weakness in Plaintiffs' case. For example, he noted the difficulty of proving an entitlement to punitive damages and emotional distress damages under Maryland law; heavy reliance on one witness, the Debtor, to establish her claims; and errors in computing compensatory damages. He testified that the Plaintiffs' damage computation failed to include the alleged downward impact of offsets for the costs of doing business, alternative employment mitigation, a diminishing impact on reputation over time, and taxes; and it did include a speculative recovery for bonuses.

The Chapter 7 Trustee, David W. Tonnessen, Esquire, testified that he found his special litigation counsel to be competent. It is evident that the Trustee relied on the evaluation of special litigation counsel in first rejecting the $500,000 offer of judgment. The Trustee continues to be of the opinion that the offer of settlement is low from a litigation perspective, i.e. in his opinion the odds favor a higher recovery.

However, upon reflection, as impacted by the passage of several months, the Trustee has concluded that the $500,000 offer of judgment is fair to the Chapter 7 bankruptcy estate. The settlement is enough to pay the administrative costs to the estate; the Trustee believes it should be enough to pay all creditors; and the interests of the Debtor are appropriately balanced because she will have sizeable, nondischargeable tax claims paid by the bankruptcy estate. The settlement provides prompt and certain realization of $500,000; and it avoids the risks of loss, of a lesser recovery, of delay in fixing liability that could result from a further postponement of trial or from an appeal, and of collection; and it permits expeditious distribution to creditors. Minimizing delay benefits creditors specifically because it saves the time cost of money.

The only asset of the bankruptcy estate is this claim, and Debtor has acknowledged that she intends to file a plan of liquidation for the sole purpose of realizing on the claim by pursuing the litigation.

## DISCUSSION

### 1. Debtor's Right to Convert to Chapter 11

■ The Debtor satisfies the Bankruptcy Code's statutory conditions for conversion to Chapter 11. Pursuant to 11 U.S.C. § 706(a):

(a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

■ Because the debtor has not converted her case previously, she has a one time absolute right of conversion. Conversion to a Chapter 11 should be allowed over objections of creditors unless egregious circumstances exist. *See In re Finney,* 992 F.2d 43, 45 (4th Cir.1993). In *Finney,* the debtor was uncooperative during the Chapter 7 proceedings, requiring the bankruptcy court to issue orders to ensure his compliance with certain of the trustee's requests. The debtor filed a motion to convert to Chapter 11 after the court had denied his discharge based on undisclosed [pre]petition transfers of property. *Id.* at 44. The bankruptcy court found that the debtor, with the intent to hinder, delay and defraud his creditors, transferred three parcels of real property within one year prior to filing his petition, that he did not disclose them on his schedules or statement of financial affairs, and that he made false statements denying the transfers at the section 341 meeting of creditors. *Finney v. Smith,* 141 B.R. 94, 95–96 (E.D.Va.1992), *aff'd as modified,* 992 F.2d 43 (1993). Consequently, the bankruptcy court denied the debtor's motion to convert to Chapter 11 for cause, on equitable grounds.

While the Fourth Circuit in *Finney* declined to comment about what type of conduct would be sufficiently egregious to deny debtor his statutory right of conversion, the court did find that such egregious conduct was not present. *Finney,* 992 F.2d at 45. On these facts, the court of appeals sustained the debtor's one-time absolute right to convert, but it also found the facts justified the bankruptcy court's *sua sponte* consideration of whether an immediate reconversion under 11 U.S.C. § 1112(b) was warranted under the standards enunciated in *Carolin Corp. v. Miller,* 886 F.2d 693 (4th Cir.1989). The circuit court remanded for a hearing on whether Finney's Chapter 11 reorganization would be objectively futile, thus satisfying the second test to justify reconversion.

■ Courts generally grant a debtor a one time absolute right to convert, even when the debtor has been recalcitrant or acted fraudulently. *Finney,* 992 F.2d at 45; *see also In re Kleber,* 81 B.R. 726, 727 (Bankr.N.D.Ga. 1987) (court allowed conversion in first instance despite debtor's fraudulent misrepresentations on his schedules); *In re Jennings,* 31 B.R. 378, 380 (Bankr.S.D.Ohio 1983); *but see In re Calder,* 93 B.R. 739, 740 (Bankr. D.Utah 1988) (section 706(a) motion was denied based on unique circumstances where debtor who was an attorney abused the system because he had three prior Chapter 13 filings, fraudulently made a false oath that prevented discharge, filed his motion to convert after his discharge was denied, and made minimal effort to repay his creditors during his previous cases).

In this case, Debtor failed to disclose the claim as an asset until after she was discharged, failed to disclose the tax claims until they were discovered during the litigation, and filed a motion to convert immediately after the Chapter 7 Trustee filed his notice of acceptance of the offer. Despite this troubling conduct, as in *Finney,* this court cannot find that the Debtor's conduct has risen to an egregious level that is sufficient to compel this court to invoke its powers under 11 U.S.C. § 105 to abrogate Debtor's statutory right of conversion. Accordingly, Debtor's motion to convert this case to Chapter 11 will be granted, in the first instance.

## II. Fiduciary Duty of the Debtor-in-Possession

Upon conversion to Chapter 11, the authority to accept or reject the settlement is removed from the hands of the Chapter 7 Trustee and is placed in the hands of the debtor-in-possession. The question then becomes whether the debtor-in-possession can fulfill her duties as a fiduciary for the bankruptcy estate when faced with a settlement offer that is enough to pay creditors, or whether an inherent conflict of interest exists that would compel this court to remove the Debtor from possession and appoint a trustee, or to reconvert the case.

■ The duties of the debtor-in-possession are set forth in 11 U.S.C. § 1107(a), which provides in pertinent part:

§ 1107. Rights, powers, and duties of debtor in possession.

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the

court prescribes, a debtor in possession shall have all of the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

A debtor-in-possession is a fiduciary. As such, Debtor would owe the same duties as a trustee. *See In re J.T.R. Corp.,* 958 F.2d 602, 604 (4th Cir.1992); *In re International Yacht and Tennis, Inc.,* 922 F.2d 659 (11th Cir.1991) (Chapter 11 debtor-in-possession has same rights and duties as a trustee).

 The fiduciary duties of the debtor-in-possession, like the trustee, extend to all parties interested in the bankruptcy estate. *Commodity Futures Trading Com. v. Weintraub,* 471 U.S. 343, 354–55, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985). A debtor-in-possession does not act in its own interest but must act in the best interest of the creditors of the estate. *J.T.R. Corp.,* 958 F.2d at 604–05. The job of the debtor-in-possession is to make sure the creditors are paid. *Grayson–Robinson Stores, Inc. v. Securities Exchange Commission,* 320 F.2d 940 (2d Cir.1963).

 The fiduciary duties include a duty of care to protect the assets, a duty of loyalty and a duty of impartiality. *See* Daniel B. Bogart, *Liability of Directors of Chapter 11 Debtors in Possession: "Don't Look Back—Something May Be Gaining on You",* 68 The Am.Bankr.L.J. 155, 216–27 (1994). In defining a duty of care courts have found that a bankruptcy trustee "... has a duty to exercise that measure of care and diligence that an ordinary prudent person would exercise under similar circumstances." *In re Rigden,* 795 F.2d 727, 727–30 (9th Cir.1986). In other words, the fiduciary must make informed decisions and "... use reasonable diligence in gathering information and considering material information." *In re Schipper,* 109 B.R. 832, 835 (Bankr.N.D.Ill.1989), *aff'd,* 933 F.2d 513 (7th Cir.1991). The duties to avoid self-dealing, conflicts of interest and the appearance of impropriety are encompassed within the concept of duty of loyalty. *See In re Combined Metals Reduction Co.,* 557 F.2d

179, 196–97 (9th Cir.1977); *In re Bellevue Place Assocs.,* 171 B.R. 615 (Bankr.N.D.Ill. 1994), *aff'd In re Bellevue,* 1994 WL 687474 (N.D.Ill.1994); and *In re Herberman,* 122 B.R. 273 (Bankr.N.D.Ga.1990). The duty of impartiality is sometimes not separately classified but swept within the duty of loyalty. *See* Bogart, *supra* at 227.

 The debtor-in-possession has a duty of care to use reasonable judgment in determining whether to accept the settlement offer. The debtor-in-possession, however, will not be required to establish the outcome of the litigation to a legal certainty. *Central Ice Cream,* 59 B.R. 476, 488 (Bankr. N.D.Ill.1985). The debtor-in-possession exercises the duty of care before presenting the offer to creditors and to the court for approval. When a court approves a settlement offer, it should take into account at least the following factors:

a) the probabilities of ultimate success should the claim be litigated;

b) the complexity, expenses, and likely duration of such litigation;

c) the possible difficulties of collecting on any judgment ultimately upheld; and

d) all other factors relevant to a full and fair assessment of the proposed compromise.

*Protective Committee for Independent Stockholders, etc. v. Anderson,* 390 U.S. 414, 424, 88 S.Ct. 1157, 1163, 20 L.Ed.2d 1 (1968), *reh. den.,* 391 U.S. 909, 88 S.Ct. 1649, 20 L.Ed.2d 425 (1968); *Central Ice Cream,* 59 B.R. at 487. The bankruptcy court should also consider the paramount interest of the creditors and give proper deference to their reasonable views. *In re Woodson,* 839 F.2d 610, 620 (9th Cir.1988); *In re American Reserve Corp.,* 841 F.2d 159, 161 (7th Cir.1987); *In re Weston,* 110 B.R. 452 (E.D.Cal.1989), *aff'd,* 967 F.2d 596 (9th Cir.1992), *cert. denied,* ── U.S. ──, 113 S.Ct. 973, 122 L.Ed.2d 128 (1993). A court should not rubber stamp the trustee's proposal, but must apprise itself of all the facts necessary to make an informed decision. *Id.* at 162. Because it is the duty of the debtor-in-possession to evaluate the offer in the first instance, the debtor-in-possession must analyze the same factors as the

court in order to arrive at a reasonable assessment of whether the settlement is in the best interests of the estate. If it is, then the debtor-in-possession has the duty to recommend it to the creditors and the court.

In a similar case to the one at bar, *In re Central Ice Cream*, the court addressed the issue of whether the court should approve a settlement agreement that represented only approximately 30% of a state court judgment as to which the defendant was seeking post-judgment relief. The settlement proposed to pay all creditors in full and one million dollars to the shareholders. In deciding to approve the settlement over the objections of the majority of the shareholders, the court determined that "[t]o seek greater return for the shareholders at risk to the creditors would be most unfair.... The creditors here should not be compelled against their unanimous wish, to engage in protracted litigation at large cost and with great risk." *Central Ice Cream*, 59 B.R. at 487.

■■■ An evaluation of a settlement offer in a bankruptcy context differs from an evaluation of a settlement offer in a non-bankruptcy context because additional factors must be taken into consideration, such as timely administration of an insolvent estate and the risk to all creditors, not just to the equity holders. With respect to an insolvent Chapter 7 estate, the evaluation is straight forward, because creditors take precedence. For example, an individual Chapter 7 debtor with an insolvent estate does not have standing to challenge the trustee's actions to liquidate the estate. *E.g., Willemain v. Kivitz*, 764 F.2d 1019, 1022–23 (4th Cir. 1985). However, in a Chapter 11 or where the estate has a potential for solvency, the evaluation becomes more difficult because a debtor has some interest in the outcome, albeit subordinate to creditors. If creditors could be paid to a certainty, regardless of the outcome of litigation, there might be a strong argument for a debtor to proceed. In the instant case, however, there is no guaranty, just a potential for a larger sum of money that will only benefit the Debtor. The creditors do not benefit from pursuing the litigation further, although they have the most of the risk. The creditors may receive less

than they would with the settlement, but there is no chance that they would receive more than they are owed. It would distort the bankruptcy process to permit the Debtor to shift the risk of loss to the creditors while retaining all the potential benefit for herself, particularly over the objections of creditors.

There is non-bankruptcy law in the Fourth Circuit that supports this concept. In *Federal Deposit Insurance Corp. v. Sea Pines Co.*, 692 F.2d 973 (4th Cir.1982), the court expressly stated that when a corporation is insolvent, the fiduciary duty of directors shifts from stockholders to the creditors. *Id.* at 977. This shift is analogous to what happens in a bankruptcy case, and in part it is what distinguishes the evaluation of a settlement offer in a bankruptcy case from the analysis a litigant would make in a non-bankruptcy context where the litigant has only to be concerned with the litigant's own interests. *See J.T.R. Corp.*, 958 F.2d at 604–05 (when the petition is filed, the debtor-in-possession must act on behalf of interests of the creditors rather than himself).

■■ A debtor-in-possession cannot "ignore his fiduciary obligations by putting his own interests before those of his beneficiaries, the creditors." *Herberman*, 122 B.R. at 285. When making an evaluation, the debtor-in-possession has to determine which interest should be given more weight. While the facts in *Herberman* are not particularly on point, the analysis of the fiduciary relationship is instructive as to what interests should prevail. The issue in *Herberman*, a chapter 11 case, concerned whether post-petition income of an individual debtor from his operation of a sole proprietorship was property of the estate. In deciding that the income was property of the estate, the court found that a conflict existed between a debtor-in-possession having an obligation to maximize the recovery for the estate and having a self interest as an employee in making money for himself. *Id.* at 281. Therefore, the court concluded that between the two conflicts the "higher duty of the debtor as trustee/fiduciary must take precedence over the more self-interested concerns of the debtor as employee." *Id.* at 281–82.

Likewise, in this case when Debtor must weigh whether to accept a prompt settlement that would substantially pay her creditors or to wait and gamble on a potential to receive a greater recovery, her creditors' interests have a higher priority than the Debtor's own; and they must take precedence. Debtor's own statement that she "intends to proceed with litigation, through trial," indicates her unwillingness to examine other interests above hers. But there is more to the conflict than mere unwillingness, it is an inherent conflict of interest between her duty as a fiduciary to the estate and her desire to maximize the amount of money she may recover for herself.

Generally, an entity cannot adequately serve two masters with opposing interests. *See In re Tel–Net Hawaii, Inc.,* 105 B.R. 594 (Bankr.D.Hawaii 1989). In *Tel–Net,* the debtor-in-possession and its controlling shareholder failed to bring preference actions for payment of liabilities that the controlling shareholder had guaranteed. The court found that the controlling shareholder's "conflicting interests preclude the proper and effective operations of Debtor and dictate the appointment of an impartial trustee." The conflicting interests of the controlling shareholder, a corporation, were to manage under a fiduciary duty to serve all of the debtor's creditors and to also serve its own creditors and shareholders above all others. *Id.* at 595. The court concluded it was not likely that the shareholder would "vigorously investigate or prosecute such matters." *Id.*

Based on the circumstances of this case, there is little doubt that the Debtor's and creditors' interests are in direct conflict. Unlike the creditors who could lose payment of their claims entirely, the Debtor is in the enviable position of having little risk in pursuing the litigation. If she prevails in the litigation, there is a potential to recover a larger sum of money. If she loses most of her debts are discharged. *See In re East Coast Airways, Ltd.,* 146 B.R. 325 (Bankr. E.D.N.Y.1992). The time factor of when the creditors will actually receive the money also adds an additional layer of risk for creditors. Pursuing the litigation will inevitably prolong distribution past the time set for trial. There may be further postponements due to discovery disputes, post-trial delay from an appeal, or difficulty in collecting on a judgment.

■ Because the conflict of interest cannot be reconciled with the debtor remaining in possession, the court is compelled either to appoint a trustee or to reconvert this case to a Chapter 7. The sole asset is the civil action, and Debtor's plan will be one that will liquidate it. The presence of a conflict on the facts of this case compels the court to remove a debtor-in-possession from administration of the case. *In re Fiesta Homes of Ga., Inc.,* 125 B.R. 321 (Bankr.S.D.Ga.1990). The inability to fulfill fiduciary duties of a debtor-in-possession is itself cause to appoint a trustee. *Bellevue Place,* 171 B.R. at 624.

■ An immediate reconversion pursuant to § 1112(b) is appropriate when the court finds subjective bad faith on the part of the debtor and an objective futility of reorganization. *Carolin,* 886 F.2d at 700–01. The Fourth Circuit reinforced the use of this test in a more recent case. *In re Finney,* 992 F.2d at 45.

■ Courts must look to the totality of the circumstances to determine whether a debtor filed with bad faith. *Carolin,* 886 F.2d at 701. Subjective bad faith implies that the debtor's real motivation is to abuse the reorganization process and to cause hardship or to delay creditors by resorting to Chapter 11, without an intent or ability to reorganize. *Id.* at 702. In other words, the court should focus on Debtor's motivation and timing of the filing. The Fourth Circuit has also looked at the debtor's recalcitrant behavior and fraudulent conduct during the Chapter 7 case in order to find subjective bad faith. *Finney,* 992 F.2d at 45. Objective bad faith requires that there is no ongoing concern to preserve and no hope of rehabilitation of an existing enterprise. *Carolin,* 886 F.2d at 701.

■ The first prong, subjective bad faith, is satisfied. The court finds that the circumstances surrounding the filing of the motion for conversion strongly imply an improper purpose. *See Id.* at 703. Debtor voluntarily chose to be in Chapter 7 and remained in

that posture for approximately four and one-half years. Debtor failed to disclose her largest debt, the non-dischargeable tax claims. It was not until after her discharge that Debtor disclosed the subject claim as an asset. Then, proceeding on the heels of the Trustee's notice of proposed acceptance, Debtor moved to convert to Chapter 11. Debtor's intent in converting her case was not to rehabilitate or reorganize, but to frustrate the process and gain control of the litigation herself at the last minute when the process was not going her way. The motion to convert was done with the purpose to delay creditors because Debtor has no present ability to reorganize and pay her creditors.

Another indication of bad faith is when the debtor files for the purpose to "hold a single asset 'hostage' in order to speculate that such asset may increase in value in order to recover its original value at the creditor's risk." *In re American Property*, 44 B.R. 180, 182 (Bankr.M.D.Fla.1984). Although, this Debtor is not trying to hold real property captive, she is trying to hold property of the estate captive, namely, the civil action, in order to gamble on a larger recovery at the risk of the creditors. This court concludes that looking at the totality of the circumstances, the Debtor filed her conversion with subjective bad faith.

The second prong is also satisfied because Chapter 11 is not "designed to provide a safe haven for riskless litigation." *East Coast Airways*, 146 B.R. at 337. Because courts disapprove of risk shifting conduct, case law dictates that proposing to fund a plan from a potential claim is sufficient to justify the conclusion that such a plan is not feasible and constitutes cause that would warrant reconversion of a case. *In re Maggaro*, 84 B.R. 803, 805 (Bankr.M.D.Fla.1988).

Having satisfied both prongs of the test, reconversion is a viable alternative to the appointment of a Chapter 11 trustee. This court finds that between the two options, reconversion is the better alternative because Debtor's sole asset is a civil action, Debtor has no ongoing business to reorganize, and appointment of a trustee will only provide additional costs and time to the estate. Therefore, this court will grant the motion to reconvert this case to a Chapter 7 to allow the liquidation to proceed as expeditiously as possible.

### III. Approval of the Settlement

■ The court may approve the settlement over objections, unless the proposed settlement falls below the lowest point of reasonableness. *In re W.T. Grant Co.*, 699 F.2d 599, 608, 613 (2d Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983); *see also In re New Concept Housing, Inc.*, 951 F.2d 932, 938 (8th Cir.1991). Continuity of the case is preserved through reconversion. Cf. *Finney*, 992 F.2d at 45. The noticed action may still be implemented by the Trustee in the reconverted case.

■ The only objection to the notice of proposed acceptance was by the Debtor who asserted that Defendants acted in bad faith proposing to settle for $500,000.00 when she believed the claim was worth $1.4 to $1.6 million in just compensatory damages alone. Having considered that Debtor originally claimed on her schedules (before the district court dismissed numerous counts) that this claim was only worth $400,000.00, that there is dispute between the experts regarding the amount of compensatory damages that Debtor may recover, and that recovering punitive damages in Maryland is difficult,[2] this court cannot find that the offer falls below the lowest range of reasonableness. *See In re W.T. Grant Co.*, 699 F.2d at 608.

■ This court has compared the settlement agreement to the likely outcome of the case. The court finds that although the issues in the litigation were not unique, all other factors weigh in favor of the settlement. The settlement will provide a prompt

---

**2.** In Maryland, an award of punitive damages on a breach of contract or tortious interference with contractual relationships requires a finding of actual malice. *See Munday v. Waste Management of North America, Inc.*, 858 F.Supp. 1364 (D.Md.1994) and *see Alexander & Alexander v. B.*

*Dixon Evander & Assoc.*, 336 Md. 635, 650 A.2d 260 (1994). Punitive damages must be proven by clear and convincing evidence. *Owens–Illinois v. Zenobia*, 325 Md. 420, 469, 601 A.2d 633 (1992).

distribution to Debtor's creditors of substantially all of their claims. There will be a benefit to Debtor because her non-dischargeable debts will be paid. The court has also weighed the other risks that the Trustee took into account in arriving at his final recommendation. A settlement should be approved in a liquidation proceeding if it provides for "the best possible realization upon the available assets ... without undue waste or needless or fruitless litigation." *Central Ice Cream*, 59 B.R. at 487. Accordingly, the court approves the settlement after the reconversion and overrules the objection of Debtor.

### IV. Propriety of Special Counsel Continuing to Serve as Counsel for Debtor

█ The second question posed by the district court addresses the propriety of the special counsel continuing as counsel for the Debtor. Special counsel was appointed by this court's order that specifically appointed counsel to prosecute these claims. This court's primary concern is whether special counsel's continuing or prior representation of the Debtor creates a conflict for special counsel in representing the Trustee, particularly if there was a risk of damage to the bankruptcy estate. Section 327(e) of Title 11, which deals with employment of special counsel, has a narrower focus than retention of general counsel to represent the bankruptcy estate under 327(a). *See In re G & H Steel Service, Inc.*, 76 B.R. 508, 510 (Bankr. E.D.Pa.1987). Section 327(e) expressly states that prior representation of a debtor does not itself disqualify an attorney from representing a trustee as special counsel if counsel does not hold an adverse interest with respect to the particular matter.

(e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

█ Special counsel need not be a disinterested party, but counsel must avoid actual conflicts of interest. 11 U.S.C. § 327(e). Generally, bankruptcy courts will approve an appointment of special counsel who previously represented the debtor, when appointing special counsel is in the best interest of the estate. *In re Iorizzo*, 35 B.R. 465, 468 (Bankr.E.D.N.Y.1983). Special counsel is usually already familiar with the litigation, and appointing different counsel could cause needless and wasteful expense and delay to the estate.

Here, special counsel was not appointed as general counsel to represent the Trustee in administering the estate or in exercising his fiduciary duties. Special counsel was not appointed to represent the Debtor. While special counsel may have urged the Trustee to pursue litigation rather than accept what counsel believed was a low offer, when it evaluated its potential worth counsel properly evaluated the civil action for its potential litigation value. It was the Trustee's responsibility to independently exercise his fiduciary duties and to make the decision whether to accept an offer.

There is a difference between litigation value of a cause of action and that value in bankruptcy. Based on the limited role of special counsel, and recognizing special counsel is not general counsel, the court finds there is no conflict from the estate's perspective in the role of special counsel, merely because special counsel previously represented the Debtor. Further, the court accepts the representation of special counsel that it does not represent the Debtor and has not done so since the dismissal of Debtor's claims. This court attributes any slippage in phraseology as to representation at respective times to lack of familiarity with bankruptcy procedures.

Because her actions no longer involve administration of the Chapter 7 estate, Debtor may waive any potential conflict dealing with her personal, post petition representation. For example, counsel for a Chapter 7 debtor is denied compensation from the estate for

services defending a non-dischargeability complaint or an objection to discharge, because the services only benefit the debtor and not the estate. *See In re Lilliston*, 127 B.R. 119, 121 (Bankr.D.Md.1991).

For the reasons stated above, the court finds that in special counsel's present capacity there is no conflict of interest between special counsel's representation of the Trustee and prior representation of the Debtor.