In re Malcolm M. KELSO, and Legal Econometrics, Inc., Debtors.

John H. LITZLER, Trustee for Malcolm M. Kelso and Legal Econometrics, Inc., Plaintiff,

v.

AMERICAN ELK CONSERVATORY, INC.; Lodge at Chama, Inc.; Antigone Corporation; American Elk Conservatory Holdings, Inc.; Grady H. Vaughn, III; Walter O'Cheskey, Trustee; Gary W. Vaughn; GWV, Ltd.; Gary W. Vaughn

Support Trust; The Grant Ellis Vaughn Trust No. 2; The Grady H. Vaughn, III Children's Trust No. 2; Regency Savings Bank, F.S.B.; Oyster Bay Financial, Inc.; and, The Grayrock Corporation, Defendants.

Bankruptcy Nos. 393–37001–HCA–7, 393–35603–HCA–7 and 393–37001–HCA–7. Adv. No. 395–3500.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

April 10, 1996.

Robin E. Phelan, W. Alan Wright, Mark X. Mullin, Haynes & Boone, L.L.P., Dallas, TX, for Trustee John H. Litzler.

Jack L. Kinzie, Baker & Botts, L.L.P., Dallas, TX, for Regency Savings Bank, F.S.B.

Bruce W. Bowman, Jr., Sharla H. Myers, Vial, Hamilton, Koch & Knox, Dallas, TX, for Gary W. Vaughn, Gary W. Vaughn Support Trust, and G.W.V., Ltd.

Charles B. Hendricks, Dawson, Sodd, Cavazos, Hendricks & Poirot, P.C., Dallas, TX, for Gary H. Vaughn, III Children's Trust.

Max R. Tarbox, Lubbock, TX, for Walter O'Cheskey, Chapter 11 Trustee.

Vincent P. Slusher, Villareal & Slusher, L.L.P., Dallas, TX, for Antigone Corporation.

Mark D. Winnubust, Dallas, TX, for Grady H. Vaughn, III.

B. Keith Trent, Snell, Banowsky, McClure & Trent, P.C., Dallas, TX, for Oyster Bay Financial, Inc. and Grayrock Corporation.

Jay R. Kline, Kline & Kline, Dallas, TX, for Christine Vaughn.

## *MEMORANDUM OPINION ON MOTION TO DISMISS*

HAROLD C. ABRAMSON, Bankruptcy Judge.

On the 7th day of November, 1995, John H. Litzler, Trustee for Malcolm M. Kelso and Legal Econometrics, Inc. (the "Debtor"), filed an adversary proceeding against Grady H. Vaughn, III Children's Trust No. 2 and the Grant Ellis Vaughn Trust No. 2; Regency Savings Bank, F.S.B.; Gary W. Vaughn; Gary W. Vaughn Support Trust; GWV, Ltd.; Walter O'Cheskey, Chapter 11 Trustee; Antigone Corporation; Grady H. Vaughn, III; Oyster Bay Financial, Inc.; Grayrock Corporation; and Christine Vaughn (collectively, "Defendants" or "Settling Parties"), pursuant to 11 U.S.C. § 549(a). In response, on the 20th of December, 1995, the Defendants moved to dismiss the Debtor's complaint for failure to state a claim upon which relief may be granted ("Motion to Dismiss"). The Court held a hearing on the Motion to Dismiss on the 1st day of February, 1996.

Upon agreement of the parties, a post-hearing brief in opposition to the Motion to Dismiss was filed by the Trustee for the Debtor ("Trustee"), on February 14, 1996, and a response to the brief in opposition was filed by the Defendants on February 21, 1996.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 151, and the standing order of reference in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O). This memorandum opinion constitutes the ruling of the Court thereon, and shall constitute findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## I. *Nature of the Motion*

The Trustee has asked this Court to set aside what the Trustee characterized as an unauthorized post-petition transfer of property of the estate, under 11 U.S.C. § 549. In response, the Defendants moved to dismiss the Debtor's complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), as made applicable by Federal Rule of Bankruptcy Procedure 7012(b).

■ A complaint may not be dismissed for failure to state a claim upon which relief may be granted unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief.[1] In applying this test, the Court must consider the facts and reasonable inferences drawn from the pleadings in the light most favorable to the Trustee.[2] However, under Rule 12(b),

> If, on a motion asserting defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56, and all the parties

shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56.[3]

■ At the hearing on the Motion to Dismiss, the parties asked the Court to consider various matters outside the pleadings, including the Statement of Issues Presented on Appeal filed by the Trustee in appealing the Court's order confirming the Settling Parties' Plans, and the transcript of a pre-trial conference on the proposed settlement. Neither the Trustee nor the Defendants asked the Court to exclude these matters from the Court's consideration. Therefore, the Court will consider this Motion to Dismiss a motion for summary judgment.

■ When a motion to dismiss is considered by the court as a motion for summary judgment under Rule 12(b), the nonmovant is entitled to the procedural safeguards of Rule 56.[4] Rule 56 is made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. The rule requires that the motion be served at least ten days prior to a hearing set on the motion giving the nonmovant a chance to respond.[5] The question that must be answered in this case, to determine whether the Trustee has been afforded the procedural safeguards of Rule 56(c), is whether the Trustee had ten days' notice after the Court accepted for consideration matters outside the pleadings in which to respond to the motion.[6] Here, the Court, upon agreement of the parties, allowed the Trustee to file a brief in opposition to the Motion to Dismiss thirteen days after the hearing, and allowed a response by the Defendants seven days after the brief was filed. The Trustee has received the procedural safeguards of Rule 56. No further motions or hearings are necessary for the Court to

1. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Benton v. United States,* 960 F.2d 19, 20 (5th Cir.1992).

2. *American Waste & Pollution Control Co. v. Browning–Ferris, Inc.,* 949 F.2d 1384, 1386 (5th Cir.1991).

3. Fed.R.Civ.P. 12(b).

4. *Washington v. Allstate Ins. Co.,* 901 F.2d 1281, 1284 (5th Cir.1990).

5. Fed.R.Civ.P. 56(c).

6. *Washington v. Allstate Ins. Co.,* 901 F.2d 1281 (5th Cir.1990).

consider the Motion to Dismiss as a motion for summary judgment under Rule 56.[7]

■■■ Summary judgment is proper in this case, if the matters presented to the Court show that there is no genuine issue of material fact and the Defendants are entitled to a judgment as a matter of law.[8] In making its determination, the Court must draw inferences from the underlying facts in a light most favorable to the Trustee.[9] The initial burden of proof that there are no genuine issues of material fact is on the Defendants, but once the Defendants have met their initial burden, the Trustee must set forth specific facts showing that there is a genuine issue for trial.[10]

## II. *Factual Background*

Legal Econometrics, Inc. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 10, 1993. Malcolm M. Kelso filed a voluntary petition for relief under Chapter 11 of the Code on October 10, 1993. The Court entered an order substantively consolidating the bankruptcy estates on January 5, 1995. This case was converted to a case under Chapter 7 of the Bankruptcy Code on July 31, 1995, and the Trustee was appointed. Until that time, Mr. Kelso served as a debtor in possession under 11 U.S.C. § 1107.[11] Certain of the Defendants filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code and plans of reorganization as follows:

(1) Chama Land & Cattle Company, The Lodge at Chama, Inc., The American Elk Conservatory, Inc., and The American Elk Conservatory Holdings, Inc. (collectively, "Chama") filed Chapter 11 petitions in November of 1993. Walter O'Cheskey was appointed Chapter 11

trustee for these Debtors and filed a plan of reorganization on May 11, 1995.

(2) Grady H. Vaughn, III filed a Chapter 11 petition in June of 1993 and subsequently filed a plan of reorganization on May 23, 1995.

(3) The Antigone Corporation filed a Chapter 11 petition in November of 1993 and subsequently filed a plan of reorganization on May 24, 1995.

The Chama plan, the Grady H. Vaughn, III plan, and the Antigone Corporation plan (collectively, the "Settling Parties' Plans") are the culmination of two years of litigation in this Court between the Settling Parties and the Debtor (the Debtor's bankruptcy estate is now represented by the Trustee). The Defendants resolved their disputes by the agreement embodied in the Settling Parties' Plans and are co-proponents of each of the plans. The Settling Parties' Plans granted mutual releases between the Settling Parties, and at the time of the confirmation hearing, contained a settlement offer allowing the Debtor to elect one of the following two options:

(1) Consensual Treatment—The Debtor and the Settling Parties would exchange mutual releases of their claims against each other no later than five days prior to the first date set for a hearing on confirmation of the Settling Parties' Plans. The Debtor would receive one-third of the net proceeds from the sale of the assets of the Chama Estate after payment of litigation costs and payment of all allowed claims; or

(2) Non-Consensual Treatment—By either express election or by failure of the Debtor to provide a signed mutual release to the Settling Parties five days prior to the

---

**7.** *Id.*

**8.** *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Washington v. Armstrong World Industries, Inc.,* 839 F.2d 1121, 1122 (5th Cir.1988).

**9.** *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**10.** *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**11.** 11 U.S.C. § 1107(a) provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

confirmation hearing, the Debtor could elect non-consensual treatment under the plans. On the date of the confirmation hearing, the Court would hold a separate hearing to enter an order estimating the value of all of the Debtor's claims and equity interests in the Chama Estates under 11 U.S.C. §§ 105(a), 502(c) and 1123.

The Debtor elected non-consensual treatment under the Settling Parties' Plans. After a hearing that was conducted over an eight-day period to hear confirmation issues and estimate the value of all of the Debtor's claims, the Court entered an order confirming the Settling Parties' Plans and estimating the claims of the Debtor on August 7, 1995. The Court entered findings of fact and conclusions of law ("Findings") relating to the August 7, 1995 order on August 21, 1995. In these Findings, the Court determined the following:

 a. The disclosure concerning these Plans was adequate and complied with the requirements of section 1125 of the Bankruptcy Code.

 b. The Plans should be confirmed pursuant to section 1129 of the Bankruptcy Code.

 c. Pursuant to Rule 9019, Federal Rule of Bankruptcy Procedure, the settlement agreements among the Settling Parties should be approved.

 d. Kelso's claims [against the Settling Parties] should be disallowed in their entirety.

 e. Kelso's claims against the settlement funds and retainer and trust accounts of Taylor & Mizell and William C. Hunter and Hunter Van Amburgh & Wolf should be denied, and as provided by the Plans, those funds are determined to be property of the estate of Grady Vaughn to be distributed as provided in the Vaughn Plan.[12]

This order is the subject of an appeal by the Trustee.

---

**12.** Findings of the Court entered on August 21, 1995, pp. 20–21.

**13.** *See Gibson v. United States (In re Russell)*, 927 F.2d 413, 417–418 (8th Cir.1991).

## III. *Section 549*

■ The basic thrust of the Trustee's argument, both in his complaint and Response to the Motion to Dismiss, is that the Debtor's refusal to accept a settlement offer was a post-petition transfer of property of the estate subject to avoidance under § 549(a) of the Bankruptcy Code.

Section 549(a) provides:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

 (1) that occurs after the commencement of the case; and

 (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

 (B) that is not authorized under this title or by the court.

■ Both the Debtor and the Defendants agree that under § 549(a), all of the following elements must be satisfied before a post-petition transfer may be avoided:

(1) a transfer of property occurred;

(2) the property was property of the estate;

(3) the transfer occurred after the commencement of the case; and

(4) the transfer was not authorized by the Court or the Bankruptcy Code.[13]

The parties also agree that the action taken by the debtor occurred after the commencement of the bankruptcy case. Therefore, the Court will determine whether or not the action taken by the Debtor could constitute an unauthorized transfer of property of the estate under the facts as pled by the Trustee.

### A. Transfer

The Court looks to the Bankruptcy Code for the definition of "transfer." [14] Transfer is defined very broadly by the Bankruptcy Code:

(54) "transfer" means every mode, direct or indirect, absolute or conditional, volun-

---

**14.** *Barnhill v. Johnson*, 503 U.S. 393, 397–398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("what constitutes a transfer and when it is complete is a matter of federal law") (*citing McKinzie v. Irving Trust Co.*, 323 U.S. 365, 369–370, 65 S.Ct. 405, 407–408, 89 L.Ed. 305 (1945)).

tary or involuntary, of disposing of or parting with property, including the retention of title as a security interest and foreclosure of the debtor's equity of redemption.[15]

Since "transfer," as defined in the Code, is "disposing or parting with property," to have a transfer it is necessary for the Court to determine that the "thing" being transferred is property; and under § 549, that the property is "property of the estate."

The Trustee relies on the Eighth Circuit's opinion in *Russell*,[16] for the proposition that an "election" by a debtor in possession can be considered a "transfer" under § 549. In *Russell*, the debtor made both pre-petition and post-petition irrevocable elections to carry forward net operating losses from previous years for tax purposes to offset future income, instead of an alternative carry back election to offset past income.[17] The court, in *Russell*, determined that the election by the debtor had transferred property of the estate, and that this transfer was subject to avoidance by the trustee.[18]

The argument proposed by the Trustee is that if, as in *Russell*, an "election" by a debtor in possession constitutes an avoidable "transfer," then Mr. Kelso's election to not accept the settlement offer providing for consensual treatment under the Settling Parties' Plans also constituted a "transfer" that is avoidable under § 549. But with this argument the Trustee avoids a crucial step—the

court, in *Russell*, first determined that the net operating loss was property of the estate—and then the court determined that the election constituted a transfer of that property.[19] Other courts have also determined that a net operating loss is property of the estate,[20] but the Court has been presented with no authority for the proposition that a settlement offer may also be considered property of the estate. Therefore, the Court must first determine that a settlement offer may be considered property of the estate, before it can determine that it has been transferred.

## B. Property of the Estate

■ "Property of the estate," as defined in 11 U.S.C. § 541(a)(1), includes "all legal or equitable interests of the debtor in property as of the commencement of the case." To determine whether a settlement offer is an "interest of the debtor in property," the Court must look to state law.[21]

■ Under Texas law, property is the unrestricted right of use, enjoyment and disposal of a thing.[22] Ownership of property contemplates the holder's exclusive control over the property.[23] In this case, the Settling Parties offered the Debtor a release of all possible claims they had against him, and one-third of the net proceeds from the sale of the assets of the Chama Estate, after payment of litigation costs and payment of all allowed claims. In return, the Settling Par-

---

15. 11 U.S.C. § 101(54); *See also, Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1492 (5th Cir.1993) ("Congress intended for the Code's definition of 'transfer' to be as broad as possible.").

16. *Gibson v. United States (In re Russell)*, 927 F.2d 413 (8th Cir.1991).

17. *Id.* at 415.

18. *Id.* at 417.

19. *Id.*

20. *See, e.g., Stern v. Commonwealth of Mass. Beverage Control Comm'n (In re J.D.F. Enterprises, Inc.)*, 183 B.R. 342 (Bankr.D.Mass.1995); *In re Luster*, 134 B.R. 632 (Bankr.N.D.Ill.1991); *Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*, 107 B.R. 832 (Bankr.S.D.N.Y.1989), *aff'd*, 119 B.R. 430 (S.D.N.Y.1990).

21. *Barnhill v. Johnson*, 503 U.S. 393, 397–398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("In absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.").

22. *Spann v. City of Dallas*, 111 Tex. 350, 235 S.W. 513 (1921) ("[Property] consists not merely in the ownership and possession, but in the unrestricted right of use, enjoyment and disposal."); *See also Davis v. Davis*, 495 S.W.2d 607, 611 (Tex.Civ.App.—Dallas 1973, *writ dismissed*) (property is "not only the thing possessed, that is, the physical corporeal thing, but also the rights in the physical corporeal thing which are created and sanctioned by law.").

23. *Id.*

ties asked for a full release of all the Debtor's possible claims against them.

 Under Texas law, the offeror, not the offeree, is the master of the offer, and the offeror can dictate the terms of acceptance and the expiration of the time for acceptance.[24] An offer is revocable by the offeror even though he or she expressly declares in the offer that it will not be revoked, or even though the offeror has specified a time in which the offeree can accept the offer, unless consideration is paid by the offeree to keep the offer open.[25]

Under this analysis, the settlement offer made to the Debtor was not property of the Debtor. The settling parties had control over the offer, the Debtor did not. This is true, because until an offer is accepted, it is revocable by the offeror.[26] No ownership would pass to the Debtor unless and until he accepted the offer.

The only property the Debtor possessed in relation to the offer by the Settling Parties was the claims against the Settling Parties that were the subject of the settlement offer.[27] By rejecting the settlement offer, no transfer of property occurred. On the contrary, by rejecting the offer, the Debtor actually retained the claims which were the property of the estate. This is not an instance, such as the Trustee points to in *Russell*, where the Debtor made an election that transfers property of the estate. Rather, this is an instance where no transfer occurred, because the Debtor chose not to accept the settlement offer and transfer his claims to the Settling Parties.

The Trustee tries to buttress his position by pointing to cases where a debtor's disclaimer of rights under a will was avoided under § 549.[28] The Trustee argues that a disclaimer under a will is an example of an "election" which keeps assets from entering the estate and is, therefore, avoidable under § 549(a). However, the view that a disclaimer under a will constitutes an avoidable transfer under § 549(a) has been rejected by the Fifth Circuit, because under the Texas relation back doctrine, the beneficiary never possesses the disclaimed property.[29] Further, an inheritance under a will that vests immediately in the beneficiary is distinguishable from an offer that must first be accepted before a contract is formed. Without an acceptance, an offer vests nothing.

### C. Authorization

 The Trustee's final contention is that the Debtor's rejection of the settlement offer required authorization by the Court. A trustee or debtor in possession derives the authority to prosecute claims on behalf of the bankruptcy estate from Bankruptcy Rule 6009. Bankruptcy Rule 6009 provides:

> With or without court approval, the trustee or debtor in possession may prosecute or may enter an appearance and defend any pending action or proceeding by or against the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal.[30]

Bankruptcy Courts derive their authority to approve settlements from Federal Rule of Bankruptcy Procedure 9019(a),[31] which provides:

---

**24.** *Lacquement v. Handy*, 876 S.W.2d 932, 935–936 (Tex.App.—Ft. Worth 1994, *no writ*).

**25.** *See Bowles v. Fickas*, 140 Tex. 312, 167 S.W.2d 741 (1943); *Womack v. Dalton Adding Mach. Sales Co.*, 285 S.W. 680 (Tex.Civ.App.—El Paso 1926, *no writ*).

**26.** *Id.*

**27.** *Besing v. Hawthorne (In re Besing)*, 981 F.2d 1488, 1493 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 79, 126 L.Ed.2d 47 (1993) (Texas law recognizes claims and causes of action as an interest in property).

**28.** *See, e.g. Williams v. Chenoweth (In re Chenoweth)*, 132 B.R. 161, 163–166 (Bankr.S.D.Ill.1991); *Cornelius v. Cornell (In re Cornell)*, 95 B.R. 219, 220–22 (Bankr.W.D.Okla.1989).

**29.** *Simpson v. Penner (In re Simpson)*, 36 F.3d 450 (5th Cir.1994) (The relation back doctrine in Texas Probate Code § 37A, makes a disclaimer effective upon the death of the decedent, as if the beneficiary never gains possession of the disclaimed property.)

**30.** Fed.R.Bankr.P. 6009.

**31.** *See In re Quality Beverage Co., Inc.*, 181 B.R. 887 (Bankr.S.D.Tex.1995).

On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

However, Rule 9019 does not state that a court must approve a settlement offer before it is accepted, or that a court can require that the offer be accepted by a debtor in possession. If this were the case, during every negotiation between the parties, in a case involving a debtor in possession or trustee, if a compromise were offered, the debtor in possession or trustee would not have the authority to negotiate. A hearing before the bankruptcy court would have to be requested to ask if the offer should be accepted, or rejected, or if a counter offer should be made. The whole premise behind Rules 6009 and 9019 is that the trustee or debtor has the authority to prosecute the action and then comes to the bankruptcy court for final approval if a settlement has been reached.

The Trustee points to *In re Bowman*,[32] for the proposition that a decision on whether to accept a settlement offer, requires a hearing before the court with notice to creditors. In *Bowman*, the debtor in possession was offered a settlement that would pay the creditors in full, but refused to accept the offer because she had the potential to receive more from a lawsuit. The only party who stood to benefit by rejecting the settlement offer was the debtor.[33] When the court, in *Bowman*, was faced with the irreconcilable interests between the debtor and the creditors as to whether or not to pursue the litigation, the court was compelled to remove the debtor in possession from administration of the case and appoint a trustee.[34] As the *Bowman* case noted, when the debtor remains in possession of the pre-petition assets, he administers them for the benefit of creditors and has a fiduciary duty to those creditors, and the creditors' interest take precedence to those of the debtor.[35] If the parties in interest in this case, after receiving the plan of reorganization containing the proposed settlement agreement, saw such a conflict as presented in the *Bowman* case, then the proper remedy would be to come to the Court and ask that a trustee be appointed, and not, as the Trustee suggests, require the Court to negotiate a settlement offer on behalf of the debtor in possession.

### IV. *Conclusion*

Based on the facts as plead by the Trustee, as a matter of law, this Court can find no support for the argument that a settlement offer is property of the estate. The Court further finds, that the election by the Debtor to reject a settlement offer by the Defendants is not a transfer subject to avoidance by the Trustee. Therefore, the Trustee cannot obtain a judgment against the Defendants under 11 U.S.C. § 549(a). Accordingly, the Court finds that the Defendants' motion to dismiss, treated as a motion for summary judgment, should be granted, and the complaint by the Trustee should be dismissed.

A separate order will be entered consistent with this decision.

---

32. *In re Bowman*, 181 B.R. 836 (Bankr.D.Md. 1995).

33. *Id.*

34. *Id.* at 845.

35. *Id.* at 844–845; *See also In re Office Products of America*, 136 B.R. 983, 986 (Bankr.W.D.Tex. 1992); *In re Chapel Gate Apts., Ltd.*, 64 B.R. 569, 576 (Bankr.N.D.Tex.1986).