**In re David LAWTON, Debtor.**

No. 99–08139–6J7.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

April 5, 2001.

776

Dennis L. Abraham, Melbourne, FL, for Debtor.

Kenneth D. Herron, Jr., Orlando, FL, Chapter 7 Trustee.

*AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S MOTION TO EXERCISE STOCK OPTIONS AND SELL STOCK*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case was heard on June 7 and October 26, 2000, on the Trustee's Motion to Exercise Stock Options and Sell Stock (the "Motion") (Doc. No. 22), David Lawton's (the "Debtor") Amended Objection to Trustee's Motion to Exercise Stock Options and Sell Stock (Doc. No. 31), and the Trustee's Objection to Debtor's Claim of Exemptions (Doc. No. 35).

The Debtor is a participant in an employee stock option plan. The Chapter 7 trustee appointed in this case, Kenneth D. Heron, Jr., asserts that all of the Debtor's rights under this very valuable stock option plan are property of this Chapter 7 estate. The Debtor asserts that his interest in the stock option plan is not subject to assumption or assignment to the trustee and is exempt from the claims of his creditors. Specifically, the Debtor asserts that the stock options are exempt wages and are not property of his Chapter 7 estate pursuant to Florida Statute § 222.11. The Debtor also contended on his amended Schedule G that the stock options are executory contracts for personal services that the trustee cannot assume or assign under § 365 of the Bankruptcy Code.[1]

The Debtor is a long-term employee of Celestica, Inc. ("Celestica"). On December 4, 1997, Celestica offered a general stock option plan for the purpose of "motivat[ing] full-time employees ... to exert their best efforts on behalf of Celestica ... and to align closely the personal interests of such employees with those of the shareholders of Celestica." (Trustee's Exhibit No. 2). The Debtor was one of the full time employees of a Celestica subsidiary who was eligible to participate in the stock option plan. Shortly after offering the stock options, the company went public making the options much more valuable.

The Debtor has continuously worked at Celestica since 1997. Celestica is a large corporation with annual earnings exceeding $10 billion. The Debtor currently leads Celestica's efforts for integrating and outsourcing certain systems. He is not a corporate officer, director, or member of senior management. He receives an annual salary of $102,000.00 plus his portion of any bonus paid to employees. Prior to filing this Chapter 7 bankruptcy case on October 1, 1999 (the "Petition Date"), he had exercised certain of the stock options. Assuming the Debtor remains employed at Celestica, he will receive additional options that will vest according to the following schedule:

---

1. Unless otherwise stated all reference to the Bankruptcy Code refer to Title 11 of the United States Code.

| December 31, 1999 | 993 options |
| December 31, 2000 | 1,322 options |
| December 31, 2001 | 1,652 options |
| December 31, 2002 | 1,983 options |

(Trustee's Exhibit No. 7).

In the Motion, the Trustee asserts all of these options are property of this Chapter 7 estate. On May 30, 2000, the Debtor amended his schedules to claim these options [2] as wages exempt from the claims of his creditors. The trustee objected to the exemption as wages alleging that the stock options are not wages and, further, that the Debtor is not single and is not the "head of family" as that term is defined in Florida Statute § 222.11(1)(c). To resolve these competing claims, the primary issue is whether the stock options are property of the bankruptcy estate, and, if so, to what extent?

■ *Stock Options are Assets of the Estate, Not Wages.* Property of the estate includes "all legal and equitable interests of the debtor in property as of the commencement of the case wherever located and by whomever held." Bankruptcy Code § 541(a)(1). However, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." Bankruptcy Code § 541(d). Although property of the estate for purposes of § 541 has been interpreted broadly, the concept is not without limits. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 205 n. 8, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Section § 541(a)(6) brings into the estate "[p]roceeds, prod-

ucts, offspring, rents or profits, of or from property of the estate," but explicitly excludes "earnings from services performed by an individual debtor after the commencement of the case." Section § 541(a)(7) is a catchall provision which further captures, "[a]ny interest in property that the estate acquires after commencement of the case" for the estate.

■ Stock options, as rights to purchase securities, are equity securities. Bankruptcy Code § 101(16)(C); *Allen v. Levey,* 226 B.R. 857, 865 (Bankr.N.D.Ill. 1998). As such, even though contingent on continual employment, options generally become part of the bankruptcy estate on commencement of the case. *Id.* at 861–66. However, the value of the employee stock options to the estate must be consistent with the value of the stock options held at the time the case was filed. "The realized or realizable value of an interest that was contingent at the time of filing is property of the estate only to the extent that the subsequently realized value is related to pre-petition actions of the debtor." *Allen,* 226 B.R. at 867. This is consistent with the inclusions and exclusions imposed on estate property by Bankruptcy Code § 541(a)(6) and § 541(a)(7).

■ A stock option is a contract for the right to buy or sell the underlying security at a certain price. Employee stock options usually have a vesting period, as in this case, which require the employee to stay employed for a certain amount of time before the option can be exercised. Exercising occurs when an employee sells an option. Significantly, employee stock options can be treated as assets or income depending on the individ-

---

2. The actual number of options varies among the Debtor's estimate in his amended schedules, the various exhibits, and the trustee's position set forth in Trustee's Exhibit No. 7. Because the trustee has the burden of proof on his Motion and because the trustee's own accounting is the most favorable to the Debtor, the Court accepts the Trustee's position as to the number of options that will vest in the future.

ual circumstances surrounding their granting.

> They [employee stock options] have characteristics of an asset in that they represent a right to purchase an ownership share in the underlying corporation's stock. Under some circumstances, they can be alienable. On the other hand, they have characteristics of income in that the whole purpose behind options is to allow the owner to capture the appreciation in the value of the stock prior to its actual purchase.... Also, they are often given as a form of compensation. Complicating their nature even further, if an option is given as compensation, it can be deferred compensation for past services, compensation for present services, or compensation for future services.

*Seither v. Seither,* No. 98–02590, 1999 WL 1143770 (Fla. 2nd DCA 1999) (ruling on a marriage dissolution case involving stock options as a marital asset).

 Employee stock options given to general employees and not tied to their individual performances are characterized as assets. Stock options given to executives in lieu of or in addition to a salary and determined by their individual performance are characterized as income. In *Matter of Baldwin–United Corp.,* 52 B.R. 549, 551 (Bankr.S.D.Ohio 1985), a creditor unsuccessfully argued that the stock options involved in that case constituted priority wages. The court found "[a]s a factual matter the stock option rights are not in the nature of wages" but are perks to increase the attractiveness of employment and to align the employees' interests with that of the company. *Id.* Conversely, in *In re Larson,* 147 B.R. 39, 41 (Bankr.D.N.D. 1992), the court found that stock options granted to a sole director to compensate him for his involvement with the corporation *were* wages. The court specifically

noted that "[d]ecisions made as a director have a direct bearing on the success or failure of the corporation which would ultimately affect the total amount of compensation received upon option exercise." *Id.* at 42. The key factor that distinguishes stock options that are wages versus those that are an asset is whether the options are awarded to an executive responsible for the company's success, as opposed to a general employee, so that the value of the options are *directly* tied to the company's success or failure.

 In this case, the Debtor's stock options arose from a general grant given to full-time employees of Celestica. The options were not pegged to the Debtor's individual performance or management control, although the Court assumes that the Debtor's job is very important to the company. The Debtor is not a director and does not influence the success or failure of Celestica as a director could, nor did he receive his options in lieu of compensation. The Debtor was and is paid a salary and, as the plan clearly states, he received the employee stock options as an incentive and as a means to align his interests with that of Celestica. (Trustee's Exhibit No. 2). Thus, the Debtor's employee stock options are an asset and not wages. As an asset, the rights embodied in those stock options attributable to the Debtor's prepetition services became property of the estate at commencement of this case. Florida Statute § 222.11 does not apply. The stock options are not exempt from the claims of his creditors. The trustee's objection to the Debtors claim of exemptions is sustained.

*Employee Stock Options are not Executory Personal Service Contracts.* Nor is the agreement granting the stock options a personal services contract. The Debtor contends his employee stock options arise from an executory personal services con-

tract that cannot be assigned or assumed by the trustee.

Bankruptcy Code Section § 365(a) permits the trustee, subject to the court's approval, to assume or reject any executory contract or unexpired lease of the debtor. At common law, however, "the duties under a contract to perform personal services could not be assigned." 3 Collier on Bankruptcy ¶ 365.06[1][b] p. 365–57 (Lawrence P. King et al. eds. 15th ed.2000). Bankruptcy Code Section § 365(c) recognizes this common law restriction and is widely read to prohibit the trustee from assuming a debtor's interest in a personal services contract that is executory on the petition date. *See Id.; See also Ford, Bacon & Davis, Inc., v. Holahan,* 311 F.2d 901, 902 (5th Cir.1962) ("The general proposition is that the interest of a bankrupt in a contract for personal services, which is executory on the date of bankruptcy, does not vest in the trustee.") (*citing* 4 Collier on Bankruptcy Sec. 70(3) (14th ed.1962)). "[W]hether a contract is personal in nature depends 'upon the nature of the subject of the contract, the circumstances of the case and the intent of the parties...'" Collier, *supra,* ¶ 365.06[1][b] p. 365–57 (*citing Leonard v. General Motors Corp. (In re Headquarters Dodge, Inc.),* 13 F.3d 674, 683 (3d Cir. 1994)).

In this case, the Debtor's argument that his stock options are an executory personal service contract fails. The Debtor has confused the right to exercise the options with the rights arising from the initial grant of the employee stock options. The Debtor clearly had no rights to exercise any options, beyond those already vested, when he filed bankruptcy on October 1, 1999. However, the Debtor did have the absolute right to exercise a certain number of options conditioned only upon his continued employment with Cel-

estica for a certain number of years. This right is no different from the right to share in a trust upon reaching a certain age. *Allen,* 226 B.R. at 865.

The employee stock options were unequivocally granted in 1997. Although the options are subject to divestment by the termination of employment, the options were established pre-petition and are binding on Celestica. Because the options were established and binding prior to the Petition Date, the Debtor's interest in the options cannot be characterized as executory. Additionally, while the options were granted "to motivate full time employees... to exert their best efforts on behalf of Celestica" (Trustee's Exhibit No. 2) there was no unique performance requirement on the part of the Debtor warranting a characterization of the Debtor's employment, or the Debtor's interest in the stock options, as a personal services contract.

The trustee is not contending that the Debtor work even a day beyond the date he chooses. The Debtor is free to quit his job at any time. Rather, the trustee asserts that the Debtor's creditors should benefit from the value of the stock options, whatever that value may be, attributable to the Debtor's employment up to the Petition Date. The Debtor will continue to benefit from the value of the options attributable to his post-petition services. As such, the trustee's Motion requesting the turnover of the stock options attributable to the Debtor's pre-petition services do not require the Debtor to provide any future personal services or run afoul on the limitation on the assignment and assumption of personal service contracts. Instead, the trustee merely seeks to recover the value of the options on the Petition Date. The difficulty is that this value cannot be determined until the options vest.

**Calculating Property of the Estate.** The remaining issue, then, is to determine the number of stock options attributable to the Debtor's pre-petition employment. The rights to the options became part of the estate on the commencement of the case, but the Debtor's post-petition services to Celestica certainly increases the options' value. If the Debtor does stay employed, he as well as his creditors will benefit.

The Debtor was granted the employee stock options on December 4, 1997.[3] The last options will vest on December 31, 2002, assuming the Debtor's continued employment. To calculate their worth on October 1, 1999, the date this bankruptcy was filed, the total number of days including and between December 4, 1997 through October 1, 1999 (666 days) is divided by the number of days including and between December 4, 1997, through the applicable vesting date. This percentage is then applied to the number of options granted for that year, as follows:

| | | | | |
|---|---|---|---|---|
| Date of Issuance of Stock Options: | December 4, 1997 | A | | |
| Date of Filing Chapter 7 petition: | October 1, 1999 | B | B − A = 666 days | |
| Date of first post-petition vesting: | December 31, 1999 | C | C − A = 757 days | C − B = 91 days |
| Date of second post-petition vesting: | December 31, 2000 | D | D − A = 1,123 days | D − B = 457 days |
| Date of third post-petition vesting: | December 31, 2001 | E | E − A = 1,488 days | E − B = 822 days |
| Date of fourth post-petition vesting: | December 31, 2002 | F | F − A = 1,853 days | F − B = 1,187 days |

Options exercisable on 12–31–99: 993

| Property of the estate: | | Property of the debtor: | |
|---|---|---|---|
| 666/757 × 993 | = 874 | 91/757 × 993 = | 119 |

Options exercisable on 12–31–00: 1,322

| Property of the estate: | | Property of the debtor: | |
|---|---|---|---|
| 666/1,123 × 1,322 | = 784 | 457/1,123 × 1,322 = | 538 |

Options exercisable on 12–31–01: 1,652

| Property of the estate: | | Property of the debtor: | |
|---|---|---|---|
| 666/1,488 × 1,652 | = 739 | 822/1,488 × 1,652 = | 913 |

Options exercisable on 12–31–02: 1,983

| Property of the estate: | | Property of the debtor: | |
|---|---|---|---|
| 666/1,853 × 1,983 | = 713 | 1,187/1,853 × 1,983 = | 1,270 |
| Totals | 3,110 | | $2,840 |

(Trustee's Exhibit 7).

Based on this proration analysis, the trustee immediately is entitled to the turn over of 874 stock options that vested in 1999 and 784 stock options that vested on December 31, 2000. If the Debtor remains employed with Celestica, the trustee can collect 739 stock options after December 31, 2001, and an additional 713 stock options after December 31, 2002. These stock options properly should be turned over to the trustee for distribution to the Debtor's creditors because these prorated options are attributable to the Debtor's work completed prior to the Petition Date. Of course, if the Debtor stops working for Celestica at any time prior to December 31, 2002, certain options will not vest. The

---

**3.** This date is the effective date of the plan and the only date in the record to establish the date of the initial grant. (Trustee's Exhibit No. 2).

trustee is only entitled to receive his pro-rated percentage of the options *after* they vest.

*Conclusion.* The Debtor's employee stock options are rights to buy stock of Celestica. They are assets of this bankruptcy estate, in part, and are not exempt wages. The trustee's Objection to the Debtor's Claim of Exemptions is sustained. The trustee's Motion for Turnover is partially granted. The Debtor immediately shall turnover 1,658 options to the trustee. To the extent additional options vest in December 2001 and 2002, the Debtor must turn over 739 options to the trustee by January 31, 2002, and 713 options to the trustee by January 31, 2003. A separate order consistent with these Findings of Fact and Conclusions of Law shall be entered.